## Bentley v. Stewart, et al.

(Decided March 19, 1918.)

## Appeal from Pike Circuit Court.

1. Judgment—Collateral Attack—Evidence.—Where a judgment is collaterally attacked as void, no evidence on that issue is admissible except the record in the action wherein the judgment was rendered.

2. Process—Service—Presumption—Infants.—In an action against an infant under fourteen years of age and others, the officer's return upon the summons issued against and naming all defendants showed: "Executed upon all except Thomas Stewart (a non-resident)"; and it will be presumed that each defendant named in the summons, except Thomas Stewart, including the infant, was served as provided in the code.

3. Infants—Non-resident—Guardian Ad Litem.—A non-resident infant having been constructively summoned and the warning order attorney having filed report, the appointment of a guardian ad litem for such infant is unnecessary.

4. Judges—De Facto Special Judge—Validity of Acts—Collateral Attack.—Although the record in a case submitted, by consent, to a special judge did not show the absence or disqualification of the regular judge, the special judge was a de facto officer, and his acts are valid and binding on collateral attack.

5. Judgment—Collateral Attack—De Facto Judge—Infants.—A judgment entered by a de facto judge of a court, having jurisdiction of the subject matter and parties, is not void, and upon collateral attack is binding on all parties, including infants.

6. Judicial Sales—Form of Judgment—Collateral Attack.—An order to the master to execute fully a prior judgment directing sale of lands, where sale was set aside, is erroneous as to form only and is not subject to collateral attack.

7. Judicial Sales—Sale of Excessive Amount of Land—Presumption on Collateral Attack.—Evidence held to show that a sale of four tracts of land was necessary to pay debts of decedent, costs and allowances; and upon collateral attack, it will be presumed that the commissioner obeyed the order of the court.

8. Judicial Sales—Purchase by Creditors—Mortgage.—The right of a creditor to become a purchaser at a judicial sale of lands is not limited; and a sale and conveyance to one creditor for the benefit of all creditors is not a mortgage.

9. Deeds—Cancellation—Misrepresentation as to Value.—Where the right to possession of lands was in litigation and one of the parties filed a pleading showing his knowledge of the lands and of his interest therein and thereafter conveyed his interest in the lands, the deed will not be set aside upon the ground of misrepresentation by the grantee as to its value.

CHILDERS & CHILDERS for appellant.

F. W. STOWERS, SAM C. STOWERS and J. F. BUTLER for appellees.

Opinion of the Court by Judge Clarke—Reversing.

Reuben Stewart died intestate, in the early part of 1893, the owner of four tracts of land in Pike county, aggregating 170 acres. He left two sets of children, five in each set.

This action was begun by the older set, who alleged that they were the only heirs of Reuben Stewart and as such were the owners, and entitled to the possession of the four tracts of land left by their father; that the defendant, John A. Bentley, was in possession thereof claiming ownership under a deed made to his father, James G. Bentley, as trustee, in an old suit of Bentley against Stewart, in which a settlement of the estate of Reuben Stewart was attempted, but that judgment, sale and conveyance therein were void. The entire record in the old suit was made a part of the petition.

Defendant filed a demurrer to the petition, claiming that, as this is a collateral attack upon the judgment in the former case, a cause of action was not stated, unless it affirmatively appeared from the old record that the judgment, sale and conveyance therein were void. This is the law, and the whole matter in so far as the interest of the older set of children were concerned could, and should, have been determined upon the demurrer. Black on Judgments, volume I, sections 252 and 271; Van Fleet on Collateral Attack, section 855; Duff v. Hagins, 146 Ky. 792; Harrod v. Harrod, 167 Ky. 308; Wallace v. Lackey, 173 Ky. 140.

In the recent case of Ratliff v. Childers, 178 Ky. 102, this whole question was reviewed, authorities cited, and the rule stated thus:

"Unless the record of the case in which the judgment attacked was rendered affirmatively shows that the court was without jurisdiction, or for some other cause the judgment is void, it will be upheld against a collateral attack. In such case no evidence is admissible except that which is furnished by the record of the action wherein the judgment was rendered."

Our inquiry to ascertain whether or not the judgment attacked is void will, therefore, be confined to the record in the old case.

Only the older set of children of Reuben Stewart were parties to or can be affected by that action, and of them only Thomas Stewart, then about eighteen years of age, was not brought before the court by personal

service, although the service upon Henderson Stewart is questioned, as will hereafter appear. After the suit had been referred to the master and he had reported the proven debts against the estate of Reuben Stewart amounting to $238.76; that he left no personal estate; and it would be necessary to sell a sufficiency of the land to pay the debts, and this report had been confirmed, a sale of a sufficiency of the land to pay the debts, costs and allowances was ordered. The land was first sold by the master to the plaintiff in that action, James G. Bentley, for $163.00. That sale was set aside because of inadequacy of price and the land resold to Parsons and York, two creditors, for $320.50, which, as stated in the master's report of the sale, was the amount of money ordered to be raised. This sale was also set aside at the instance of the purchasers, because Thomas Stewart had never been brought before the court. He, being a non-resident of the state, was summoned by warning order, and the report of the warning order attorney, who was regularly appointed, was filed, and thereafter, on March 21, 1896, this order was entered: "Submitted to R. T. Burns as special judge herein by consent, oath waived." Following this order is another which, after reciting that the sale under the former judgment entered at the March term, 1894, had been set aside because Thomas Stewart was not before the court and that he subsequently had been constructively served, is in this language: "It is now adjudged by the court that the master commissioner of this court execute fully the judgment of this court at its March term, 1894, directing the sale of the land, and that he report to the next term of this court." The master commissioner, pursuant to this order, again advertised and sold the land, when it was bought by some for all of the creditors for $369.97. This sale was confirmed and the master commissioner was directed to convey the land to W. M. Conley as trustee for all the creditors of Reuben Stewart. After the deed had been made to Conley the case was dropped from the docket. About a year thereafter, Conley having died, the case was redocketed by consent and the land conveyed to James G. Bentley as trustee for the creditors.

The grounds upon which it is asserted the judgment and the sale and conveyance of the land pursuant thereto, as to each of the older set of children, are void, are as follows:

1. That Henderson Stewart and Thomas Stewart were not before the court.

2. That R. T. Burns, who entered the judgment, was acting as special judge by consent, and that as Henderson Stewart, Thomas Stewart and Isabella Wallace were then infants they could neither consent to his acting in that capacity nor waive his taking the oath prescribed by law. .

3. That all of the land was sold as a whole for more than the debts, costs and allowances.

4. That the sale to all the creditors and conveyance to one of them as trustee for all was not a sale and did not divest the heirs of Reuben Stewart of their interests only so far as was necessary to pay the debts, and constituted the grantee the trustee of the heirs to hold and manage the property for the benefit of the creditors only until their claims were satisfied out of the rents and profits accruing therefrom.

1. The first reason assigned for the invalidity of the judgment is that two of the infant children of Reuben Stewart were not properly before the court. Summons was issued against the five children by the first marriage, only one of whom was at the time of age, the youngest child being under fourteen. The summons is in the record and is endorsed: "Executed upon all except Thomas Stewart, February 23, 1894. R. Hatcher, S. P. C. by J. G. Bentley, D. S."

It is insisted by counsel for appellees that, since the return of the officer does not show that the summons was served upon Henderson Stewart, an infant under fourteen years of age and having no guardian, by the delivery of a copy to his mother and custodian, there was no service upon the infant. This position is not correct, as it will be presumed that the officer did his duty and served the summons upon the infant as the law prescribes by delivering a copy thereof to his mother and custodian. Bailey v. Fanin, 12 Ky. Law Rep. 644; Bridges v. Ridgeway, 2 Littell 396. The case of Beverly v. Perkins, 1 Duvall 252, is not in point, because the return in that case showed affirmatively that the summons had not been served upon the infant in the way provided by the code, which conclusively refuted the presumption it had been legally done. In the other case relied upon by appellees, Warrick v. Loar, 11 Ky. L. R. 6, it is only decided a judgment against an infant under fourteen years of age is void when no summons is served

on the father, guardian, mother, or custodian, and the question of such or any service having been made was not raised.

As all of the defendants in the old suit were personally served with summons, except Thomas Stewart, and as he was constructively summoned November 22, 1895, it will be seen that all of these parties were properly before the court when the judgment and order of sale of March 21, 1896, were entered.

A guardian *ad litem* was appointed for all the infant defendants and he filed his report for them which, however, was without effect so far as Thomas Stewart was concerned, as he was not then before the court and was a non-resident. The warning order attorney filed his report before the judgment was entered, and it was not necessary that a guardian *ad litem* be appointed for the non-resident infant. Powell v. Baer, 143 Ky. 282.

2. Although it appears that the cause was submitted, by consent, on March 21, 1896, to R. T. Burns as special judge, it does not appear that the regular judge was absent or disqualified to act, or that the judgment was rendered by R. T. Burns as special judge, or that he ever took any action whatever with reference to the suit. It would seem, therefore, that under the authorities heretofore cited, the presumption must be indulged upon a collateral attack upon a judgment that it was rendered by the regular judge. But, if this were not true and it be assumed that Burns consented to act as special judge and as such rendered the judgment, he was nevertheless a *de facto* officer and his acts as such are not void and can not be attacked collaterally. The court unquestionably had jurisdiction of the subject matter and of the parties, and R. T. Burns, if he rendered the judgment, was not a tortious usurper but was in possession of the office of special judge and acting under color of authority and in the belief that his selection was legal; and his acts are therefore valid and binding on collateral attack.

In Coquillard Wagon Works v. Melton, 137 Ky. 189, M. C. Givens acted as special judge of the Henderson county court by agreement of the parties, the regular judge being disqualified because he was a party to the action. Under such circumstances, the law then provided that the nearest magistrate should preside as county judge; and the selection of Judge Givens, who was not a magistrate, was not authorized and was il-

legal, yet this court held that he was a *de facto* officer and that his acts could not be collaterally attacked, the court saying:

"It may be conceded that his selection was irregular, and was an error available to any party by objection, and upon appeal, or perhaps by prohibition. The fact remains, however, that Judge Givens assumed to act as judge of the court under color of authority, and in the belief that his selection was legal. He was not a tortious usurper. He was the *de facto* judge of the court, in as much as he was actually in possession of the office, exercising its functions in that cause, and acting under the color of title. Stokes v. Kirkpatrick, 1 Metc. 138; Rice v. Commonwealth, 3 Bush 14; Chambers v. Adair, 110 Ky. 942, 62 S. W. 1128, 23 Ky. Law Rep. 373; Elliott v. Burke, 113 Ky. 479, 68 S. W. 445, 24 Ky. Law Rep. 292. . . . .

"If the appointing power was validly exercised, the officer would be the lawful incumbent. The essential to the creation of an officer *de facto* is that his incumbency should not be legal, but that it should be exercised by virtue of some election or appointment attempted as of legal right, but invalid for want of power in the appointing body, or because of the defect in the election. Here it was believed by the acting parties, their counsel, the clerk of the court, and the judge selected, that the parties could, by their agreement, invest him with the prerogatives of the office. He was, under that belief, appointed, accepted the appointment in good faith, and acted as judge under it. . . . . He had every essential feature of an officer *de facto*. The judgment and other proceedings had in the court of which he so acted as judge are binding in a collateral attack. Freeman on Judgments, section 148."

See also 23 Cyc., pp. 616 to 621, inclusive; 15 R. C. L., p. 517.

It, therefore, results that the judgment is not void because entered by the *de facto* special judge and that upon collateral attack it is binding upon all parties, even though some of them were infants. Meyers v. Pedigo, 24 K. L. R. 1923, 72 S. W. 734; Carney, et al v. Yocum's Heirs, et al., 176 Ky. 173; 195 S. W. 482.

3. It is next insisted that the judgment of March 21, 1896, under which the land was sold is void, because it only directed the master to "execute fully the judgment of this court at its March term, 1894, directing the

sale of the land," instead of ordering the sale of the land, describing it, and prescribing the terms of sale, as was done in the original judgment. This objection is urged evidently upon the mistaken idea that the former judgment, ordering the sale of the land, had been set aside, whereas, it was only the sale thereunder that had been set aside. That judgment was valid and binding upon all of the parties except Thomas Stewart, who was not before the court when it was entered; and as to them at least, the order to the master to re-execute the judgment was all that was necessary; and as to Thomas Stewart, who was constructively before the court when the judgment and order of sale were entered on March 21, 1896, the objection is to the form of the judgment only and not to the jurisdiction of the court, and even if the judgment as to him was erroneous in form, it is not subject to collateral attack.

4. The contention that more land than was necessary was sold to pay the debts, costs and allowances does not affirmatively appear from the record, although at the last sale to which the objection is directed the land was sold for $369.97, whereas at the next preceding sale it was sold for $320.50, which sum, the record discloses, was the amount necessary at that time to be raised in order to pay the debts, costs and allowances. A year and nine months had elapsed between the two sales, during which time interest had accumulated on the $320.50 in the sum of $33.65, which accounts for all the difference between the two sales except $15.82, which is easily accounted for by allowances to the warning order attorney and to the master, and the costs due the clerk which had accumulated between the two sales. It is, therefore, apparent that the land was not sold for more than was necessary to be raised, and the presumption must be indulged that the master obeyed the instructions of the court and sold only a sufficiency of the land to pay the debts, costs and allowances. This is especially true, since the master's report of sale, which doubtless would disclose the fact made apparent by the above calculation, is not now in the record.

5. That the sale to the creditors and a conveyance to one of them as trustee for all was not a sale but in effect a mortgage only, is a novel contention in support of which no authorities are cited. That this contention is untenable is apparent from the fact that the court has no authority to make such contract for the benefit of

the heirs in the settlement of the estate of a decedent, the court's authority being limited to a sale in accordance with the statutory provisions; and there is no limitation upon the right of any one or more of the creditors to become purchasers at such sale. It is manifest, therefore, that the sale to all the creditors and a conveyance to one of them as trustee for all divested such of appellees as were parties to that action of all title and interest in the land sold and conveyed to the creditors and they had no further interest therein. Consequently, they were not concerned with the subsequent orders of the court conveying to a new trustee for the creditors upon the death of a former trustee, and their consent was not necessary to such orders, and whether such orders were correctly or erroneously entered does not affect their interests or concern them in any way.

We, therefore, conclude that the judgment in the old case was not void and the court erred in setting it aside.

6. After the instant case had been prepared for trial and was ready for submission between the older set of Reuben Stewart's children and appellant, four of the five children of Reuben Stewart by his second wife filed a petition to be made parties, wherein they sought to recover their undivided interest in the land. As they were not parties to the old suit and as it is conceded that they are the children and heirs of Reuben Stewart, it is manifest that their interest in the land, amounting to an undivided one-tenth each, was not affected by the old suit; and that they were the owners of and entitled to recover their interest therein, and that the possession of appellant was not adverse to them. However, after they had been made parties to the suit, all of the second set of children, by deed, conveyed their interest in the land to appellant, but the deed from Amos Stewart was, at his request, set aside by the court upon the ground that it was obtained by fraud; and to this part of the judgment, appellant also complains upon this appeal.

In the petition to be made parties, Amos Stewart, his brother and two sisters stated that they were the owners of an undivided interest in the four tracts of land described in the original petition, which description they adopted as fully as if set forth in their petition; that it was of the rental value of more than $800.00 from the time that appellant has had it in possession and control; that they were entitled to share in the $2,150.00 paid into court by the Big Sandy Railway

Company and the C. C. & O. Railway Company for rights of way through these four tracts of land. It is apparent that Amos Stewart knew or by any kind of vigilance could have known what his interest in the land, if established, was worth, as well as his interest in the right of way money then in court. Yet, with this knowledge or the ready means of obtaining it, he conveyed his interest in the land to appellant for $100.00. The only semblance of fraud that was practiced upon him, according to his own testimony, is that appellant and his agent, Jesse Stewart, who is a brother of Amos and who conveyed his interest to Bentley for the same price, represented to him that his claim to and interest in the land, if established after litigation which might be protracted, would be of little value to him after the payment of the debts against his father's estate and the costs of litigation; that although he was born and had lived in the immediate vicinity until he was thirteen or fourteen years of age, he had since lived in West Virginia, 247 miles from the land and had been in Pike county but four days before he made the deed to appellant, and knew nothing of the value of the land or his interest therein; and that he was induced to make the conveyance by the fraudulent representations of his brother, who was acting as the agent of appellant, and of appellant as to the value of the land.

When he was asked why he had executed the deed to Mr. Bentley for $100.00, he answered: "He said that was the worth of it, and I didn't know any better. He said that there was enough debts against it to take it. Q. Do you know of any debts your father owed when he died? A. If he owed any debts I don't know anything about it. Q. What efforts, if any, did Bentley make and what did he say to you to get you to sign the deed? A. He came to me three or four different times and said $100.00 was all the land was worth. Said he couldn't beat me out of the land and the only hope he had was to wear it out in court."

This is the only evidence of any misrepresentation of any kind, and it will be seen that Bentley told Amos that he could not beat him out of the land and that his only hope was to wear it out in court, and that his interest was worth only $100.00. So, the only misrepresentation was as to the value of Amos' interest in the land; and while Amos said he did not know the value of his interest at the time he conveyed it to Bentley, he

had theretofore filed his petition in this case to be made a party thereto, in which he had set out all the facts with reference to the land, its location, the condemnation by two railroads of portions thereof for rights of way, and that the railroads were being built through the land, and from his knowledge of these facts he was bound to know or could easily have ascertained the value of the land; and the only fact that his evidence tends to support is that he was willing at that time to accept $100.00 in hand rather than to await the uncertain period during which the litigation might be protracted. We do not, therefore, think that this testimony was sufficient to authorize the cancellation of his deed to Bentley.

As said in German National Bank's Receiver v. Nagel, 26 Ky. L. R. 748:

"It is a well settled rule that mere commendation, or even false representation, by the seller of property as to its value, when the purchaser has an opportunity to ascertain for himself such value by ordinary vigilance or inquiry, has no legal effect on legal rights of the contracting parties, even when made with the intention to deceive."

And the same rule would of course apply to representations of value made by the purchaser to the seller.

See, also, to the same effect, Pomeroy's Equity Jurisprudence, volume II, section 893.

In Cyc. 336, it is said:

"The cancellation of an executed contract is an exertion of the most extraordinary power of a court of equity, which ought not to be exercised except in a clear case, and never for an alleged fraud, unless the fraud be made clearly to appear."

See Chicago Building & Mfg. Co. v. Beavin, 149 Ky. 267; Crawford & Gatlin v. Livingston, 153 Ky. 58.

Wherefore, the judgment is reversed with directions to dismiss the petition.