## Commonwealth, By, etc. v. Harkness' Admr., et al.

(Decided January 12, 1923.)

### Appeal from Fayette Circuit Court.

1. Judgment—Agreed Judgment—Setting Aside.—An agreed judgment alleged to have been obtained by fraud will not be set aside unless it is shown that there was a misrepresentation of a material fact by one of the parties, that the party making it knew or should have known that it was untrue, that it was made for the purpose of inducing the complainant to rely on it, and that he had the right to and did in fact rely on it.

2. Evidence—Misrepresentation.—Held that the evidence in this case does not show any actual misrepresentation of fact upon which the complainant relied.

3. Taxation—Settlement of Proceeding to Collect Taxes.—The fact that in the settlement of a proceeding to collect back taxes the county attorney and sheriff of the county were paid certain fees authorized by statute is not of itself evidence of fraud on their part or collusion with the representative of the taxpayer to effect the settlement; and, consequently, does not warrant the setting aside of the judgment of settlement.

4. Taxation—Proceeding to Collect Back Taxes—Pleading.—In a proceeding to collect back taxes from the administrator of an estate an answer was filed by the administrator denying knowledge or information sufficient to form a belief as to whether his decedent, on the assessing dates involved, was the owner of the various securities set out in the statement. Held under the facts shown that such a denial was not a misrepresentation that in law amounted to fraud.

5. Taxation—Proceeding to Collect Back Taxes.—Answer filed by the personal representative, in a suit to collect back taxes, denying knowledge or information sufficient to form a belief as to whether his decedent, on the assessing dates in question, was the owner of various securities set out in the statement, held not to be a representation of any fact upon which the Commonwealth had the right to or did rely, in view of the fact that its representatives were in possession of full information as to the amount and value of the estate owned by decedent at the time of his death.

6. Taxation—Proceeding to Collect Back Taxes—Knowledge of Personal Representative.—The extent and value of the intangible property owned by a decedent on the various taxing dates for the five years preceding his death are not facts presumptively within the knowledge of his personal representative, and the personal representative, in a suit to collect back taxes, may deny knowledge or information sufficient to form a belief as to the ownership of the securities set out in the petition on the dates therein mentioned.

7. Pleading—Answer—Denial of Knowledge or Information.—An answer that denies knowledge or information sufficient to form a belief as to a fact presumptively within the knowledge of the pleader does not put in issue the allegations which it attempts to deny, and, since it states no defense and does not in law amount to anything, it is not a representation of any fact on which the opposing party may rely.

8. Pleading—Fraudulent Misrepresentation.—The denial in the answer of a personal representative that his decedent was a resident of the state of Kentucky does not constitute a fraudulent representation, since the question of legal residence is one to be determined from the intention as well as fact of residence, and the facts as to decedent's residence being known to the Commonwealth, the denial was nothing more than an expression of an opinion as to the legal effect of the evidence.

CHAS. I. DAWSON, Attorney General, SPENCE S. CARRICK, JOHN C. DUFFY and FRANKLIN, TALBOTT & CHAPMAN for appellant.

BARRETT, ALLEN & ATTKISSON, ALLEN & DUNCAN, HUMPHREY, CRAWFORD & MIDDLETON and MURRAY, PRENTICE & ALDRICH for appellee Burgoyne, Administrator.

HUNT, NORTHCUTT & BUSH for appellees Bradley and Yancy.

Opinion of the Court by Judge Moorman—Affirming.

The Commonwealth of Kentucky, through its revenue agent for the state at large, filed this suit in the Fayette county court to vacate a judgment rendered in that court on June 2, 1916, wherein there was assessed against the estate of L. V. Harkness, deceased, for taxation in Fayette county, intangible property of the value of three million dollars as of September 1, 1911, four million five hundred thousand dollars as of September 1, 1912, five million dollars as of September 1, 1913, five million dollars as of September 1, 1914, and two and a half million dollars as of September 1, 1915. The county court granted the relief sought by the Commonwealth, but on appeal to the circuit court the petition was dismissed. From the latter judgment this appeal has been prosecuted.

At the time of his death in January, 1915, L. V. Harkness owned residences in New York City, East Hampton, New York, Fayette county, Kentucky, and Pasadena, California. For the several years preceding his death he had spent his time at the various places that he owned, but had spent only a small part of it at his Kentucky place, known as Walnut Hall. None of his intangible property had ever been assessed for taxes in this state. More than a year after his death T. C. Bradley, the sheriff, and Hogan Yancy, the county attorney of Fayette county, learned through a newspaper report that in an action pending in the courts of New York, in which the taxing authorities of that state were endeavoring to collect an inheritance tax on the estate of Harkness, the children of Hardness had testified that he was not a resident of New York at the time of his death but was legally domiciled in Kentucky. Thereupon the county attorney went to New York to investigate the facts as to the legal residence of Harkness at the time of his death, but before starting filed a proceeding in the county court of Fayette county, in the name of the sheriff, to collect back taxes against the Harkness estate for the five years preceding his death. On arriving in New York the county attorney called on the firm of lawyers representing the estate of Harkness and explained the purpose of his visit. He was informed by them that the question in which he was interested was in issue in the surrogate's court and that the proof had been taken; and by direction of the senior member of that firm he was afforded an opportunity to examine all the evidence filed

in the case pending in that state. The record in that case contained an inventory of the securities owned by Harkness at his death. Having examined that record and supplied himself with a copy of the inventory, the county attorney returned to Kentucky and sought an interview with counsel representing the estate in Kentucky, with the view of effecting a compromise of the proceeding filed in Fayette county. After various negotiations, during which the county judge of Fayette county, the sheriff and special counsel employed by him, the governor and the attorney general of the state were consulted, the case was settled and an agreed judgment entered by which the assessments hereinbefore mentioned were made.

In the inheritance tax suit in New York the surrogate court decided that Harkness was a resident of New York at the time of his death, but on appeal that judgment was reversed and it was held that he was not a resident of New York but a resident of Kentucky. This action was filed after it had been decided that the agreed judgment in the Bradley suit was a bar to a similar suit filed in the county court of Fayette county by a revenue agent to assess back taxes against the Harkness estate in Fayette county for the same period as that involved in the Bradley suit. The ground of this action is that the judgment in the Bradley case was procured by fraud.

There are four charges of fraud: (1) Misrepresentations by Harry Burgoyne, administrator of the estate in Kentucky, and his counsel as to the residence of Harkness on the taxing dates set out in the petition; (2) misrepresentations by them as to the value of the estate of Harkness on those dates; (3) collusion on the part of the sheriff and the county attorney with the representatives of the Harkness estate to effect a settlement of the case and thus enable the two county officers to obtain large fees for their services; and (4) failure of the administrator to disclose the value of the intangible property of Harkness in his answer and to admit or deny, according to the facts, the allegations of the petition as to the securities owned by Harkness on each of the assessing dates set out therein.

With reference to the actual fraud claimed and particularly to the first contention, i. e., misrepresentation as to residence, it should be observed that to establish actionable fraud, against which equity will relieve, it must be shown that there was a misrepresentation of a

material fact; that the party making it knew or should have known it was untrue; that it was made for the purpose of inducing the other party to rely on it; and that the complainant had the right to and did in fact rely on it. Livermore v. Middlesborough Town Lands Co., 106 Ky. 140; Taylor v. Mullins, 151 Ky. 597; Hoffman v. Friedman, et al., 171 Ky. 317; and Hicks v. Wallace 190 Ky. 287. It is in this view of the law that the evidence pertaining to the claim of misrepresentation as to Harkness' residence must be considered.

It is not claimed that the administrator made any representation as to the residence of Harkness other than what might have been inferred from the answer that was filed after the compromise was made. But it is contended that the attorney for Burgoyne did make the representation that Harkness was not domiciled in Kentucky, and it is argued that the Commonwealth accepted that representation as indicative of the purpose to make an issue as to Harkness' residence, and, anticipating great difficulty in proving his residence in Kentucky, was induced to settle the case. To our minds there are two conclusive answers to this contention. The first needs no elaboration; it is that the language used by Colonel Allen and relied on by the Commonwealth as supporting the contention, when considered in connection with the entire conversation that occurred between him and the attorney for the Commonwealth, is not susceptible of the construction that the Commonwealth is endeavoring to place on it. The second is, the evidence shows affirmatively that the Commonwealth did not rely on the representation that it is said that Colonel Allen made. So, even if it be admitted that the language used by Colonel Allen was in fact a misrepresentation, the evidence does not show that the county attorney or any other person representing the state or county relied on that representation or was thereby induced to agree to a settlement of the case. The evidence shows that Bradley and his associates were more familiar with the facts concerning Harkness' residence than was Colonel Allen. Harkness had spent only a small part of his time in Kentucky. Mr. Yancy had examined the evidence in the New York case and he "was convinced that the court would hold that he (Harkness) was a resident of New York." Colonel Allen had not seen that evidence. But Yancy, to whom the alleged misrepresentation was made, had seen it and he was con-

vinced after examining it that any judgment obtained in Kentucky would be a "pick-up for the state and county." In these circumstances there is no basis for the contention that there was a misrepresentation of the fact of residence upon which the Commonwealth relied in agreeing to settle the suit.

The second contention of appellant is equally unsustainable. The evidence does not show that any representative of the Harkness estate ever made any actual representation to the officials of the Commonwealth as to the value of that estate. Yancy testified that Colonel Allen had never represented to him at any time what the amount of the estate was; and indeed it is shown, in the testimony of Yancy, that Allen expressly disclaimed any knowledge of the value of the estate. It is not contended that Burgoyne ever made any statement to any agent of the Commonwealth as to the value of the estate. So there is no possible foundation for the contention that there was an actual representation as to the value of the estate upon which the Commonwealth relied and by reason of which it was induced to agree to a settlement of the case.

The next contention of the Commonwealth is that the sheriff and the county attorney were induced to settle the case because of the large fees that they would receive if a settlement was effected, and it is intimated that fraud may be deduced from that fact. A similar intimation is evolved from the fact that Burgoyne was represented by Colonel Allen, the Commonwealth attorney for that district. The latter suggestion is too obviously untenable for discussion. As to the other point, it is enough to say that both of those officials believed, under the facts developed in the case pending in New York, that it would eventually be held that Harkness was a resident of the state of New York, and that any substantial settlement of the Kentucky case would be "a pick-up for the state and county." The county judge, in rendering the judgment setting aside the judgment of settlement, expressly exonerated the sheriff and the county attorney of any fraud. The same appraisal of the evidence was made by the circuit judge, and we are unable to reach a conclusion that militates in the slightest degree against the views expressed by those courts. This conclusion is fortified by proof that the governor of the state and the attorney general, as well as the then judge of the Fayette circuit court and a number of prominent citizens in

Fayette county, all were of opinion that the settlement was a judicious one.

It is earnestly insisted, however, that the answer filed by Burgoyne, denying knowledge or information sufficient to form a belief as to whether Harkness, on the assessing dates involved, was the owner of the various securities set up in the petition, was a misrepresentation that in law amounted to a fraud. This contention rests not only on the assumption of an actual misrepresentation, but also on the theory that a court proceeding to collect back taxes is merely a means provided by the legislature for the assessment of property, that it is the duty of a taxpayer to list all his property for taxation, and, accordingly, it was the duty of the administrator, as a matter of law, to disclose all the property that decedent owned on each of the assessing dates in question, or at least in his answer to admit or deny the averments of the petition in respect to that subject.

A controlling fact in the determination of this question is, it seems to us, that the answer was not filed until after the compromise had been agreed on. Besides, the county attorney was fully informed as to the extent of the securities owned by Harkness at his death; and he had, as we have observed, consulted with various officials of Fayette county and the state of Kentucky as to the propriety of settling the case. It was after an agreement had been reached with their approval that the answer was filed and the settlement consummated. These facts alone conclusively show that the answer was not considered by the representatives of the Commonwealth in arriving at their decision to settle the case, and could not have induced the settlement. There are, therefore, lacking on this feature of the case those elements necessary to what is regarded in law as a fraudulent representation.

But if it be assumed that the administrator and his attorney actually represented to the Commonwealth that Harkness did not own securities of any larger amount or greater value on the taxing dates involved than were assessed against the administrator, we nevertheless could not hold that such representation rendered the judgment fraudulent. The reason for this view is that the Commonwealth knew precisely what securities Harkness owned at the time of his death. It had a list of those securities and could easily have ascertained

whether he owned them on the taxing dates involved. One cannot avail himself of the misrepresentation of a material fact when he himself is in possession of information that may readily be used in the exercise of ordinary diligence to verify or to disprove the representation. German National Bank's Receiver v. Nagel, 26 Ky. Law Rep. 748, and Bentley v. Stewart, et al., 180 Ky. 23. That the Commonwealth could have ascertained the facts with regard to the acquisition of the securities held by Harkness at his death and that it assumed that he owned them all on the assessing dates in question are beyond dispute. One of the attorneys for Bradley testified that he informed the county judge that it would be easy to verify the list of securities on the books of the corporations in which they were held, and that it was assumed and agreed among those representing the Commonwealth that the Harkness estate, for each of the years involved in that case, was practically the same as shown on the list of securities that they had. In view of this uncontradicted statement it cannot be said that the Commonwealth was misled by the answer of the administrator or was induced to make the settlement by reason of it.

But it is said that it was the duty of the administrator either to admit or deny that Harkness owned the property set out in the statement on the assessing dates alleged therein, and the failure of the administrator so to do amounts in law to such fraud as requires the setting aside of the judgment. We do not subscribe to that view of the law. It ignores the misrepresentation of a material fact by which the complainant was induced to act when he otherwise would not have acted, which must be shown before a relievable case of fraud is established. Nor can we concur in the contention that the rules of pleading in proceedings for the collection of back taxes are different from those applicable to other actions. Admittedly the authority for Bradley's suit was derived from legislative enactments, the object of which was to provide a method for the assessment of omitted property. But because the legislature has provided a method of assessing property by court proceeding, it does not follow that it is incumbent upon the property owner to come into court and disclose all the property he owned on the assessing dates. He is required in his answer to respond to the allegations of the statement filed by the Commonwealth; to truthfully answer if he can as in every case he must do, but he is not required to do

more. And if the facts in respect to the allegations that he is called on to answer are presumptively within his knowledge, he must either admit or deny the allegations. This is the rule in all classes of cases. Lucas v. Lucas' Admr., 18 Ky. Law Rep. 661; Barrett, &c. v. Godshaw, 12 Bush 598; Edge v. Central Construction Co., 195 Ky. 646. The evidence in this case shows that Burgoyne did not know what estate Harkness owned on the assessing dates involved in the Bradley case, and in our opinion he had the right to deny knowledge or information sufficient to form a belief as to whether the estate did or did not consist of the securities set out in the statement.

But assuming, as contended by the Commonwealth, that the facts were presumptively within Burgoyne's knowledge or that it was his duty to ascertain the facts and disclose them in his answer, we then have a case in which the answer did not contain a good denial, and, under the authorities last cited, could and should have been treated as stating no defense. In that view of the case the attempted denial could have been stricken or Burgoyne, on motion of the Commonwealth, might have been required, as in the case at bar, to ascertain the facts and either to deny or admit that Harkness owned the securities set out in the statement on the respective dates therein mentioned. If it was the duty of the administrator either to admit or deny the allegations of the statement, the answer contained no defense and necessarily did not put in issue the allegations as to Harkness' ownership of the securities. It follows, therefore, that there was no reason for the belief that the Commonwealth would have to prove the allegations with respect to the amount of securities owned by Harkness on the assessing dates in question, because there was no issue made as to those allegations. One cannot rely on a statement that does not constitute a representation of any fact or in law does not amount to anything. This, as well as the established fact that the statements in the answer did not induce the settlement is conclusive as to the fraud claimed on this theory of the case.

What we have said with reference to that part of the answer that related to the securities owned by Harkness on the assessing dates involved applies with equal force to the denial that he was legally domiciled in Kentucky

on those dates. That denial in nowise induced the settlement, because it was not made until after the settlement had been agreed on. Furthermore, if the answer had been filed before a settlement was reached, it would not have been improper to make an issue on that point. In the first place, the legal residence of decedent was not presumptively within the knowledge of Burgoyne, and furthermore the question was one about which, on all the facts, there might well have been a difference of opinion. In determining the location of one's legal residence the intention as well as the fact of residence must be considered. Pettit's Extrix. v. City of Lexington, 193 Ky. 679. Burgoyne could not, any more than the representatives of the Commonwealth, know where Harkness was legally domiciled. That question was in issue in the case pending in New York. Yancy was in possession of all the facts shown in that record and he believed that Harkness was a resident of New York. Acting on that belief he solicited and made a settlement of the case pending in this state. In this situation Burgoyne's answer was nothing more than an expression of an opinion as to the legal effect of the evidence, about which lawyers and even courts might differ, and about which the officers of the Commonwealth, who knew all the facts, entertained a definite opinion. It certainly could not have influenced the decision of those officers, because they knew what evidence could be adduced and, in considering a compromise of the case, it was for them to decide whether, on the evidence with which they were familiar, it would or would not be decided that Harkness was legally domiciled in Kentucky.

One cannot read this record and escape the conclusion that the representatives of the Commonwealth believed that it would eventually be determined that Harkness was legally domiciled in New York on the taxing dates involved—certainly that the chances of such a determination were highly probable—and so believing concluded that an assessment of a part of the estate in Fayette county for county and state taxes was preferable to taking the chances of an adverse decision at the end of the litigation pending in the county court. They had authority to make such a settlement and to enter an agreed judgment putting it into effect. We can see no reason for holding that the judgment so rendered was fraudulently obtained.

The judgment of the circuit court is affirmed.

Whole court sitting.