## Lynch v. Dunn's Administrator.

(Decided March 17, 1925.)

### Appeal from Garrard Circuit Court.

1. Contracts—Deeds—Contract will Not be Set Aside for Mere Impairment of Mental Capacity of Signatory.—Deed or writing will not be annulled on mere showing of impairment by age or disease of mental faculties of one of signatories, unless such mental infirmity be sufficient to render him incapable of understanding transaction and protecting his interest.

2. Executors and Administrators—Mental Incapacity Invalidating Contract Held Insufficiently Established.—Mental incapacity of administrator of estate held insufficiently pleaded and proved in action on contract for purchase of monument made by him.

3. Sales—Statements of Value Regarded as Statements of Opinion, Not Fact, as Affects Fraud.—Statements of value by a seller of monuments held mere opinions and not statements of facts as affecting issue of fraud.

BEN G. WILLIAMS, W. C. MARSHALL and TOMLINSON & HAYS for appellant.

L. L. WALKER for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Reversing.

Erasmus Dunn died a resident of Garrard county, leaving a will by which he provided for the erection of two monuments in the cemetery. R. H. Tomlinson, the executor named in the will, qualified and on September 7, 1920, entered into two written contracts with R. J. Lynch to erect two monuments and four markers as provided by the will, at the price of $4,000.00. Lynch executed the work. It was completed about December 1, 1920, and after it was inspected by Tomlinson he paid Lynch $2,405.65 thereon. He did not pay the remainder because he did not have other personal estate in his

hands. Tomlinson died in September, 1921, and L. G. Davidson was appointed as administrator, with the will annexed, to succeed him. Davidson declined to pay Lynch the balance of the contract price. Lynch brought this suit to recover the balance due him under his contract against Davidson as administrator. Davidson filed an answer in which, among other things, he alleged that Tomlinson when he entered into the written contract was in feeble and failing health and on account of his weak condition was unable to look after or transact the business of the estate and the agent, Ross Adams, who made the contract was a kinsman and brother-in-law of Tomlinson, who did not know or understand the price or worth of granite or marble and on account of his great confidence in his brother-in-law relied on him for the worth and value of the monuments and the agent deceived and overcharged Tomlinson and sold him monuments for $4,000.00 which were not reasonably worth $1,500.00; that the agent fraudulently induced Tomlinson to sign the contract by representing to him that the monuments were of value $4,000.00 when in truth and in fact they were not worth exceeding $1,500.00; that either Tomlinson was defrauded and cheated by the agent or there was a collusion between him and the agent whereby the estate was to pay for monuments worth $4,000.00, when in truth and fact it only got the benefit of monuments worth $1,500.00; that when said monuments were completed Tomlinson had completely broken down in health and was unable to attend to any kind of business and was incompetent to receive or accept the monuments at that time and did not know of the deception which had been practiced upon him. He prayed judgment for $1,000.00, the amount paid on the monuments over and above their value. The plaintiffs demurred to the answer and the demurrer being overruled he filed a reply controverting its allegations. The case came on for trial before a jury and at the conclusion of the defendant's evidence the plaintiff moved the court for a peremptory instruction to the jury to find for the plaintiff. This was overruled. The plaintff then introduced evidence and at the conclusion of his evidence again moved the court for a peremptory instruction to the jury to find for the plaintiff, which was refused, and the case being submitted to the jury they returned a verdict in favor of the plaintiff for $594.35. The court entered judgment upon the verdict and refused a new trial. The plaintiff appeals.

The proof introduced on behalf of the defendant was in substance this: Ross Adams was a brother-in-law of Tomlinson. Adams was in the business of getting contracts to build monuments. He communicated with Lynch and got Lynch to come up to Lancaster to see Tomlinson about this contract. By the agreement between Lynch and Adams, one-half of the profit on the contract was to go to Adams. Lynch came up to Lancaster and had an interview with Tomlinson in his office. Tomlinson was a prominent member of the bar and in regular practice, though suffering from tuberculosis. Lynch, after obtaining from Tomlinson the plans of the monuments wanted, came home and figured out the designs and the cost. He then returned to Lancaster and told Tomlinson that $4,000.00 was a reasonable price for the work and after some discussion the written contracts were drawn by Tomlinson and signed by him and Lynch. Adams was present at these interviews. The defendant introduced statements made by Lynch giving the cost of the monuments in which Lynch said the cost was something like $3,050.00, in his deposition taken on cross-examination in this action.

The statement of Luther Smith, read as his deposition, showed he had been for six years in the monument business; that he examined the monuments put up by Lynch and that $2,000.00 was a fair price for the work. Ed. C. Gulley stated that he lived across the street from Tomlinson; that in September, 1920, his physical condition was weak, he was in poor health, it seems; his mental condition he would think was weakened with it and that in his opinion he was not competent to do business at that time; he was a man past seventy years of age. The disease he suffered from was tubercular trouble; he would come to Gulley's store regularly every evening and they would walk up the street together; he was failing for a couple of years before he died. On cross-examination he said that Tomlinson bought at his store any article he handled; that he did not think he was incompetent to make purchases and that for two years before he died he wasn't jolly like he used to be. In the recent case of Swiss Coal Co. v. Shepherd, 199 Ky. 57, the court thus stated the rule as to mental incapacity to avoid a contract:

"The general rule is that a deed or writing will not be annulled because of the incapacity of one of

the signatories unless it appear that he was laboring under such degree of mental infirmity as to make him incapable of understanding the nature of his act. It is not enough to show that his powers were impaired by age or disease, but it must be shown that his mental infirmity was such as to render him incapable of understanding the transaction and protecting his interest in consummating it.''

Neither the allegations of the answer nor the proof of the witness, Gulley, was sufficient to show that Tomlinson did not have mental capacity to make the contract.

The proof of the witness, Smith, was insufficient to show that any fraud was practiced on Tomlinson in the making of the contract, for a rival contractor not unusually differs from his rival as to the character of the work of the other. Statements of value are not ordinarily regarded as statements of facts within the rule as to what constitutes fraud in obtaining a contract.

"Representations of value are generally regarded as mere opinions, or seller's statements, and, when such is the case, are held not to constitute fraud." 12 R. C. L. 279.

"The general rule that fraud cannot be predicated on representations as to value and the like is based on the fact that value is largely a matter of judgment and estimation about which men may differ, and that such representations can rarely have induced the other party to enter into the contract without negligence on his part." 12 R. C. L. 281.

To same effect see Vokes v. Eaton, 119 Ky. 913; Bentley v. Stewart, 180 Ky. 23.

Under the evidence for the defendant the court should have instructed the jury peremptorily to find for the plaintiff, for the only witness introduced as to incapacity was a nonexpert witness and he stated no facts warranting the conclusion that Tomlinson was incapacitated to understand the contract.

The plaintiff introduced himself and testified that $4,000.00 was a reasonable price for the work; that the profit on the contract was about $500.00; that Adams had nothing to do with the making of the contract; that he made it with Tomlinson; that Tomlinson was not in a feeble or failing condition; that he represented to Tomlinson that $4,000.00 was a reasonable price for the work and that this statement was true. He introduced

the president of the Muldoon Monument. Company, of Louisvile, Kentucky, who testified that he had examined the monuments in the cemetery and that $4,690.00 was a reasonable price. The plaintiff also introduced William Wetter, the president of another monument company in Louisville, who had examined the monuments. He testified that $4,000.00 was a very reasonable price, and was less by 10% than his company would have furnished them for. He also introduced the manager of the tombstone business at Maysville, who figured that the monuments should reasonably cost $4,416.00 and that a price of $4,000.00 was very reasonable. He introduced a banker, with whom Mr. Tomlinson did business, who showed that he was always competent to transact business; that he had several conversations with him about these monuments and that Tomlinson told him once or twice that he wanted to do just exactly as the old man desired; that the things had cost him more than he expected, but that he had investigated and that he was going to buy because they might get higher; that he had done the best he could.

Under this evidence no less than under the evidence for the defendant the court should have instructed the jury peremptorily to find for the plaintiff. This is not a suit on a *quantum meruit.* It is a suit upon a written contract to pay a certain sum. Unquestionably the contract has been carried out. If written contracts should be set aside or ignored on such evidence as we have here, that the paintiff made an extravagant estimate of value, few written contracts would stand. There is nothing in the evidence to show that Lynch had any reason to doubt Tomlinson's capacity or to show that on the facts he knew he should not have made a contract with him. If the statements of the seller of a horse as to the value of the horse would prevent him from recovering the contract price, few notes for the price of horses could be enforced. The same is true of contracts for lawyers' fees and other like contracts for personal services. Even in land sales the seller often has a very much higher idea of the value of the land than some of his neighbors. Dunn had been dead some time; Tomlinson had had plenty of time to investigate the price of monuments and no reason exists why the plaintiff should not recover the contract price.

The contract was made between Lynch and Tomlinson. It was made on Lynch's representations and esti-

mates as to the reasonable cost. Adams was simply the go-between bringing Lynch and Tomlinson together. No confidential relationship existed. It is peculiarly a case where statements of value should be regarded as only matters of opinion and judgment. Written contracts would be valueless if they may not be enforced on such proof as we have here.

Judgment reversed and cause remanded for a new trial and further proceedings consistent herewith.