## McGuffin v. Smith, et al.

(Decided June 25, 1926.)

### Appeal from Hardin Circuit Court.

1. Fraud.—One of vendors of farm selling interest to other vendor before deed was made cannot thereby release himself from liability for fraud practiced on vendee.
2. Partnership—Principal and Agent.—Partners selling farm owned by them are liable for representations of their agent as well as representations of each other.
3. Fraud.—"Actionable fraud" requires false and material representation knowingly or recklessly made with intention that it be acted upon, and that plaintiff relied thereon to his damage.

4. Fraud—Vendor Representing Farm. Contained Permanent Water. Supply, Knowing Falsity. of Representation or Making it Recklessly Intending Vendee Should Rely Thereon, is Liable for Vendee's Loss.—Vendor of farm, knowingly making false representation to vendee that farm contained a never failing pond and water in horse lot, with intention that vendee, not knowing of their falsity, should rely thereon, or making such representations. recklessly as a positive assertion without knowledge of its truth, is liable to vendee suffering loss by reliance thereon.

5. Fraud.—Action for damages for fraud in sale of farm and for cencellation of purchase-money note is not for rescission, and evidence of items making up price should be excluded.

6. Fraud.—Vendee, defrauded in sale of farm, is entitled to difference between market value of what he got and what he agreed to pay.

7. Fraud.—That vendee could have examined farm is no defense to action for damages for fraudulent representations in sale.

H. L. JAMES for appellant.

L. A. FAUREST for appellees.

Opinion of the Court by Drury, Commissioner— Reversing.

Appellant, whom we will refer to as the plaintiff, sued the appellees, T. J. Smith and J. E. Hall, for $1,750.00 damages for alleged fraud practiced upon him in the sale of a farm, and in addition, sought to have cancelled a note for $550.00, which he had given for a part of the purchase price. He was unsuccessful.

In October, 1921, defendants Smith and Hall owned of record a farm in Hardin county, containing 124¼ acres. A Mr. Hinkle was a silent partner of Smith in the ownership of the Smith half of this farm. Thus Smith and Hinkle were partners and Hall was a joint owner with them. They desired to sell the farm, and Smith testified he had authorized Hall to look out for a buyer and to bring about a sale. Thus Hall had authority for himself and as the representative of Smith and Hinkle to bring about a sale. This would authorize him to employ reasonable assistance. Hall told one J. H. Board that if he would sell it to the plaintiff for $4,800.00 he would pay him $100.00. Board testified that Hall told him to show plaintiff how the place was located—on a mail route, a graded school within 800 yards of the house, a real good well right in the yard, a never-failing pond back in the field, and water in the horse-lot that never failed. He

said that he told plaintiff those things. They advertised the place for sale at auction, but did not sell it, nor did plaintiff attend the sale. Hinkle mailed plaintiff one of the hand bills of this sale, and asked him to come up and they would trade before the sale. In that hand bill we find this:

"A 7-room frame house, good well in yard, cellar, all necessary outbuildings, two good barns, 35 or 40 acres of grass, 12 or 15 acres timber, mostly wire fence, plenty stock water. A good buy. Close to graded and high school and church and two up-to-date stores; new pike nearing completion."

Plaintiff says he relied on these representations, and bought the farm at the price of $5,250.00 and paid and agreed to pay therefor as follows: By conveyance to them of 52 acres of land, $2,000.00; by delivery to them of 8 mules at $150.00 each, $1,200.00; 1 jack, $500.00; 1 Liberty bond, $500.00; East View Bank stock, $500.00, and the execution of one lien note to them for $550.00. He says the pond soon went dry as well as the well in the yard, and the one in the horse-lot, and that the farm, without any more water on it than it had, was not worth over $3,000.00. Hall claimed he did not think the items named above were worth what they were listed at, and claims to have sold out to Smith before the deed to plaintiff was made, and that he should be released. He produced this typewritten paper, evidencing, as he says, his sale to Smith:

"This contract and agreement made and entered into this the 4th (4th changed with pen to 8) day of November (November stricken with pen and Oct. inserted) 1921 by and between Thomas J. Smith party of the first part and J. E. Hall party of the second part witness: That party of the second part has this day paid to the party of the first part $1040.00 for which said party of the first part agrees to release all liens on the 124.25 acre tract of land as recorded in deed book No. 75 page 302 Hardin county clerk's office, and to pay the taxes for the year of 1921 on the same tract of land and to give said party of the second part all crops grown on said tract of land for the year of 1921.

"THOS. J. SMITH, party of the first part.
"J. E. HALL, party of the second part."

Previous to the signing of this paper, Hall and Smith had on Oct. 8, 1921, signed with McGuffin the contract for the sale of this farm to McGuffin. McGuffin claims in this action damages for deceit in obtaining his signature to this contract by false and fraudulent representations made to him by which he was induced to sign this contract. The deed called for in this contract was signed by J. E. Hall and wife and by Thos. J. Smith and delivered to McGuffin on Nov. 4, 1921. This deed, however, only carried out the contract made by them with McGuffin on Oct. 8, 1921. If a fraud was practiced on McGuffin that fraud was complete on Oct. 8, and Hall can not escape his liability for participation therein, if he did, by the contract *supra* made on Nov. 4. Defendants claim now this contract between Hall and Smith was written at the same time and by the same man as the contract with McGuffin, but the paper gives such abundant evidence that this is not true as to shake our faith in the whole evidence of any men who say it is true. The contract with McGuffin was written with a machine the type of which needed cleaning very much and was written with a purple ribbon, while the Hall and Smith contract was written on a machine the type of which was clean and was written with a black record ribbon, and that these were written on different machines is clearly disclosed by an examination of these papers, for the figure 3 in one contract is of an entirely different form from the figure 3 in the other. McGuffin says he knew nothing of any sale by Hall to Smith, but Hall says he told McGuffin of it on Nov. 4, 1921 in the presence of a witness who supports that statement. What difference can it make if he did? The fraud, if any, practiced on McGuffin became complete when his signature was procured to this contract on October 8. This bungled effort to escape by means of this so-called agreement is not very impressive. Hall can not, by that sort of prestidigitation, avoid the result of the alleged fraud practiced on plaintiff. The defendants contend they are not responsible for what Board said. The rule is thus given in 27 R. C. L. 365:

> "As a general rule a vendor is liable for the fraud of his agent in effecting a sale though made without his knowledge or sanction. If the representations are made by the agent as a part of the negotiation for the purpose of bringing about the sale, and by means of this it is brought about, the convey-

ance made and the proceeds of the sale received, this brings the case within the general rule that a principal is responsible for such acts of his agent as are done within the scope of his authority, whether authorized or not, except by the general authority to do the principal act. All the authorities recognize that the fraud of the agent will afford ground for a rescission of the contract by the purchaser. And, according to the better view, the fraud of his agent will render the vendor liable in an action of tort for damages, the purchaser not being restricted merely to the right to rescind the sale, where the vendor does not on being informed of the fraud repudiate the contract and restore the purchaser to his original position.''

All of these parties, Board, Hall, Smith and Hinkle, were endeavoring to sell this farm. Board was the agent of the last three, and they must answer for what he said and did. Smith and Hinkle strenuously contend that they did not employ Board and are not responsible for what Board said. However, they did authorize Hall to bring about a sale and it seems to us right that they should answer for what was said and done by Board whom Hall employed.

Aside from that, McGuffin testifies that on October 7th, these three, Hall, Smith and Hinkle, came to see him. He opened the gate for them and Hinkle told him then practically all that Board had told him about rural free delivery, graded school, good road, prospective pike, markets, a never-failing well in the yard, another in the horse-lot, and big never-failing pond in the field. He says he went over the next day and they pointed out the pond to him; that it looked to be a big pond, and he relied on what they told him. Hinkle does not deny this conversation, but does generally deny saying anything about a pond on the place. Defendants stoutly insist this case is controlled by the case of United Talking Machine Co. v. Metcalf, 174 Ky. 132, 191 S. W. 881, wherein we said:

"But if he had falsely made these statements, or either of them, if the defendant as he was then situated could have, by the use of ordinary diligence, detected the fraud, it would have been his duty to do so.''

We were then talking about a written contract which Metcalf had before him, and we held it was his duty to read it and see what it contained. He could and should have done so. McGuffin, however, could not by looking at this pond tell whether it would ever fail or not. The same is true of the wells. Only experience in a dry season could determine that. Defendants may or may not have known the truth about these things, and if they did know they could have told just what they knew, and if they did not know, they should have said they did not know. They also cite this from the case of Com. v. Harkness' Admr., 197 Ky. 198, 246 S. W. 803:

"One cannot avail himself of the misrepresentation of a material fact when he himself is in possession of information that may readily be used in the exercise of ordinary diligence to verify or to disprove the representation."

That does not apply here because McGuffin was not in possession of any information by means of which he could tell whether or not the representations made by the defendants were untrue. They also cite the case of Bentley v. Stewart, 180 Ky. 23, 201 S. W. 978, wherein we said:

"It is a well settled rule that mere commendation, or even false representation, by the seller of property as to its value, when the purchaser has an opportunity to ascertain for himself such value by ordinary vigilance or inquiry, has no legal effect on legal rights of the contracting parties, even when made with the intention to deceive."

That is true as to value, but not as to facts on which to base an estimate of value, where the one claiming to be deceived is not shown to have at hand any reasonably available means of determining the truth of representations made to him about those facts. If there was a pond on this farm, McGuffin could rely on what was told him about how long it would last. He can not rely on any statement as to size for he could see that, and as he says the boundaries were correctly shown him, he cannot rely upon any representations made to him about a pond that was not within those boundaries. In Pickerell & Craig

Co. v. Bollinger-Babbage Co., 204 Ky. 314, 264 S. W. 737, a similar case, we said:

> "This is a common-law action for deceit. A false representation may not be recovered for in such an action unless it is made with knowledge of its falsity. Ball v. Lively, 4 Dana 369; Campbell v. Hillman, 15 B. Monroe 508; Warren v. Barker, 2 Duvall 155. The representation must have been made with actual or constructive knowledge of its falsity. Prewitt v. Trimble, 92 Ky. 176; Southern Express Co. v. Fox, etc., 131 Ky. 257."

The general rule is that to constitute actionable "fraud" it must appear: (1) that defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Baker v. McDonald, 185 Ky. 470, 215 S. W. 292; Hicks v. Wallace, 190 Ky. 287, 227 S. W. 293; Crescent Gro. Co. v. Vick, 194 Ky. 727, 240 S. W. 388.

> "It is fraud on the part of the one possessing superior knowledge of the facts affecting the subject matter of the contract to not disclose those facts to the other party if he knows he is ignorant thereof and relies and can only rely on him, and make a full disclosure. . . . This is required in order that the parties may be placed on an equal footing and in furtherance of common honesty and fair dealing, the rule being in such cases 'that *suppressio veri*, as well as *suggesto falsi* is a good ground for setting aside a contract.' " Roberts v. Parsons, 195 Ky. 274, 242 S. W. 594.

The same rule applies in this case. These parties might have said nothing and allowed plaintiff to have found out for himself, but when they undertook to make representations, or to answer plaintiff's questions, about material matters, with the intention that plaintiff should rely thereon, and he did, and those representations or answers were to them and not to plaintiff known to be false, or were recklessly made as positive assertions, without any knowledge on their part of the truth

of them, and plaintiff has suffered thereby, they are answerable therefor.

This is not an action for rescission, and no evidence should have been received relative to the items making up the $5,250.00 plaintiff undertook to pay or the value thereof. Plaintiff was entitled to get what it was represented to him he would get, and if he did not get that, then he was entitled to the difference between the market value of what he got and what he agreed to pay. It is no defense to say the farm was there and plaintiff could examine it for himself. Defendants ought to have said that then.

Instruction one should be so modified as to permit the plaintiff to recover, if fraudulent representations, as defined herein, were made by any of these four men to the plaintiff; but plaintiff did not know they were untrue, and bought upon reliance thereon. There was no need for giving instruction two, if one and three had been properly given. These men were acting together, and for each other, and if one made fraudulent misrepresentations, all are responsible, and instruction three should be so modified.

The judgment is reversed, and plaintiff is awarded a new trial to be had in conformity herewith.

Whole court sitting.