## PEDIGO et al. v. BYBEE et al.

Court of Appeals of Kentucky.
Nov. 21, 1952.

Brents Dickinson, Jr., Glasgow, for appellants.

Marion Vance, Richard L. Garnett, Glasgow, for appellees.

MOREMEN, Justice.

By this appeal, Ruie Pedigo and James G. Pedigo question the accuracy of that part of the judgment which awarded damages to appellees, Charles E. Bybee and Maurice Bybee, for loss sustained by them resulting from misrepresentations by appellants concerning the condition of a dwelling house which was purchased by appellees.

The issue between the parties involved a determination by the jury of whether appellants falsely represented to appellees that the house was in good condition and did not leak and whether appellees relied upon such deceitful statements and were thereby induced to buy the house. The jury found the transaction to be tainted by fraud.

Appellants insist that the trial court erred (1) in refusing to direct a verdict for appellants because no actionable fraud was proven, and (2) in giving the jury an incorrect standard for measurement of damages.

The house was built of concrete blocks on a lot which sloped from the front towards the rear. It was built with two floor levels. The upper portion, which was level with the front of the lot, consisted of four rooms and a small bathroom. Under it was a second apartment, containing four rooms, which opened on a lower level of ground towards the back of the lot.

The dwelling was inspected several times by appellees. They seem to have had some doubt as to whether the building was impervious to water. They testified that on several occasions they asked if the house leaked and were assured that it did not; and then, again, of a conversation with Mrs. Pedigo, appellant testified:

"Yes, went out there one day and it was raining and I walked up on the porch and it looked all right. She didn't ask me to come in. I got suspicious, thought maybe it was leaking. I asked her about that. Asked Mrs. Pedigo does this house leak anywhere and she said no sir it does not. Those were the exact words she gave."

After appellees purchased the house and moved in, the rains came and the water poured in around the flue and through the blocks. It seeped in around the windows and flowed in under the doors. Of the lower level, appellees testified the water came in "around the flue, and poured on the floor, and come in around the floor of the house on both sides and run on the blocks that high. This little place was full, run up over the floor, had to sweep it out the back door."

The appellants denied that they had made misrepresentations of fact, but this appeal is not predicated upon the claim that the verdict was not supported by the evidence. It is based upon the theory that no actionable fraud was shown because, prior to the purchase of the property, appellees had ample opportunity to and did inspect the property and observed the type of construction and the nature of the material used and, therefore, under the rule iterated in Osborne v. Howard, 195 Ky. 533, 242 S.W. 852, that in the making of contracts for the sale of land, the rule of caveat emptor applies and is relaxed only when the vendor does something to prevent the purchaser from making a thorough inspection or where the purchaser had no reasonable opportunity to visit or examine it, the

circuit court should have directed a verdict for appellants.

It is true that the Osborne case and this one bear some similarity in fact. Both cases involved a sale of real property. Both purchasers inspected the premises and became suspicious. Both requested and received assurances from the vendors that their misgivings were groundless. But at this point the equivalence ends because the similarity in fact ceases. In the Osborne case the representations were little more than the expression of an opinion of what might happen in the future. There, Howard sold to Osborne a farm. Although the purchaser made only a cursory examination of it, it caused him to suspect that the soil was poor. Both of the men were farmers and competent to judge the quality of the soil. Osborne stated that he thought the soil looked thin but Howard said that it had been a dairy farm for twelve years, was well rested, and had only been worked for two years. He stated that it would make a thousand pounds of tobacco to the acre or ten barrels of corn. This was no more than the expression of an opinion concerning future events and amounted to little more than "puffing."

◼ In the instant case, appellees requested specific knowledge as to a fact which could have been established by past performance, that is, whether the house leaked when it rained. The only time appellant was present when it was raining and when he might have determined for himself whether the house leaked, he was not requested to make an examination, nor was he invited into the house by Mrs. Pedigo in order that he might see for himself.

We believe that a case more nearly in point is Bunch v. Bertram, 219 Ky. 848, 294 S.W. 805, 807, which was an action for damages against the vendor for misrepresentation that the basement of the property purchased did not leak and was dry. We said:

"It is well settled that, where a representation is made in positive terms as to a fact actually within the knowledge of the one making the representation, and when the representation itself contains nothing so unreasonable as to

create a doubt in the mind of the one to whom it is made, the hearer may rely upon it without an investigation when an investigation would be so difficult as to render it improbable that the hearer would ascertain the falsity of the representation by such an investigation. The tendency of modern decisions is to restrict, rather than to enlarge, the doctrine of caveat emptor."

See also Annis v. Ferguson, 84 S.W. 553, 27 Ky.Law Rep. 56; McGuffin v. Smith, 215 Ky. 606, 286 S.W. 884; Cowles' Ex'r v. Johnson, 297 Ky. 454, 179 S.W.2d 674, 675, wherein we said "This doctrine does not bar the right to rely on false representations as to factual matters made by one disposing of property." The court properly submitted the question to the jury.

◼ Appellants next complain that the court erred in submitting this instruction on damages:

"If you find for the plaintiffs, you should find such a sum in damages as you believe from the evidence will fairly and reasonably represent the difference, if any, in the market value of said premises as represented by plaintiff and the market value of the premises in the condition they actually were at the time of the sale, not to exceed the sum of $2000."

By this instruction the court adopted the "benefit of bargain" rule, which has been accepted by the majority of the courts, 37 C.J.S., Fraud, § 143, page 477, and has been applied in this state. In Bunch v. Bertram, which has been discussed, the court said:

"The measure of damages, if any, is the difference between the value of the property with a basement such as appellee represented the basement to be and the value of the property with a basement such as the proof shows it to be."

Appellee relies upon the case of Evola Realty Co. v. Scott, 306 Ky. 119, 206 S.W. 2d 466, 467, which holds "cost of conformation correctly constitutes the measure of damages in a case of this particular character." In this opinion no facts are stated

that enable the reader to determine what the "particular character" of that case was. However, we assume that it was definitely established upon the trial that the deficiencies of the house might readily be corrected and repaired. Therefore, the cost of reparation, when added to the value of the house as it stood, would be equal to the value of the premises as represented by the vendor, and the vendee would obtain the benefit of his bargain. However, in the instant case, there was no showing that the dwelling could be readily repaired so as to make it waterproof.

We believe the court handed the correct yardstick to the jury.

The judgment is affirmed.