# Hicks v. Wallace.

(Decided January 25, 1921.)

## Appeal from Boone Circuit Court.

1. Fraud—Actionable Fraud—Deceit.—To constitute actionable fraud it must appear (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly without any knowledge of its truth and as a positive assertion; (4) that he made

it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. It is not necessary that the fraudulent misrepresentation be in writing; as in such case the right of action arises out of the fraud and deceit of the defendant, it is not affected by the statute of frauds.

2. Fraud—Misrepresentation.—The gist of a fraudulent misrepresentation is the producing of a false impression upon the mind of the other party, and if this result is actually accomplished, the means of accomplishing it are immaterial.

3. Fraud—Misrepresentation.—The rule requiring investigation by the person to whom a misrepresentation is made, does not apply if any relation of trust or confidence exists between the parties, so that one of them places peculiar reliance in the trustworthiness of the other; but in such case the latter is under a duty to make full and truthful disclosure of all material facts, and is liable for fraudulent misrepresentation or concealment.

4. Appeal and Error—Pleading.—As in this case the averments of the appellant's petition state a cause of action for fraud, the ruling of the circuit court in sustaining a general demurrer to and dismissing the petition, constitutes reversible error.

JOHN L. RICH for appellant.

N. E. RIDDELL for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Granting appeal and reversing.

This is an appeal prayed from a judgment of the Boone circuit court sustaining a general demurrer to the petition and dismissing an action brought by the appellant, Samuel C. Hicks, wherein he was seeking to recover of the appellee, David B. Wallace, $303.38, by way of damages, for his alleged loss and deprivation of that amount of money, by and through the fraudulent acts and knowingly false and fraudulent misrepresentations of the appellee.

It appears from the averments of the petition that on November 11, 1911, the appellant, at the solicitation and upon the advice of the appellee, loaned Sophia J. Todd and O. K. Todd, widow and son of J. S. Todd, deceased, $2,100.00, and to secure the payment of their joint note evidencing this loan, principal and interest, they then duly executed to appellant a mortgage upon a tract of land in Owen county devised them by the will of J. S. Todd. The note and mortgage were delivered to appellant by the mortgagors through appellee and the mort-

gage immediately put to record in the office of the clerk of the Owen county court.

Sophia J. and O. K. Todd by appointment of the will of J. S. Todd duly qualified as the executrix and executor thereof; but before completely settling the testator's estate both died in Owen county, intestate, the death of O. K. Todd occurring first and that of Sophia J. Todd several years later. O. K. Todd was survived by his wife, Ella Todd, and two infant children, Fredrick and Mary Todd. After the death of O. K. Todd, Sophia J. Todd, as the surviving executrix of the will of J. S. Todd, and Ella Todd as administratrix of the estate of O. K. Todd brought suit in the Owen circuit court to obtain a construction of J. S. Todd's will and settle the two estates. The infant children of O. K. Todd and their statutory guardian and certain creditors of the estate of each decedent, including the appellant whose mortgage lien debt remained unpaid, were made parties defendant to the action and called upon to file and assert their several debts. Appellant by answer and cross petition claimed and asserted a lien upon the land for his debt by virtue of the mortgage executed to him by Sophia J. and O. K. Todd to secure its payment, alleged its superiority over all other debts or liens and prayed its enforcement. The infant defendants and their guardian by answer controverted the appellant's mortgage lien, also the lien debts of other creditors, and resisted their enforcement, alleging that Sophia J. and O. K. Todd, by whom these lien debts were created, each took under the will of J. S. Todd, only a life estate in the land thereby devised, and they (the infants) the remainder at their respective deaths; therefore, the liens in question were valid only as against the life estate of each of the mortgagors in the land.

The circuit court by its first judgment rendered in that action only declared its construction of J. S. Todd's will, leaving the rights of the creditors to be subsequently adjusted; and in so doing held that Sophia J. and O. K. Todd jointly took under the will of J. S. Todd the fee in the land devised, thereby excluding the infant children of O. K. Todd from any interest therein under the will.

The infants and their guardian prosecuted an appeal to this court from that judgment, on the hearing of which we held that the will of J. S. Todd did not devise Sophia J. and O. K. Todd the fee in the land of the testator,

but only a joint life estate therein, with remainder to the children of O. K. Todd; hence, the judgment of the circuit court. was reversed and the cause remanded for such further proceedings in that court as would not be inconsistent with the opinion of the appellate court. Todd's Gdn. v. Todd's Admr., 155 Ky. 209.

Following its return to the circuit court the case was referred to the master commissioner for a report as to the assets and liabilities of the estates of J. S. and O. K. Todd, which reports, when filed, contained the information required by the order of reference and, as a part thereof, furnished a schedule of the lien debts attempted to be asserted by creditors against the land. After the filing of exceptions to the report by the parties objecting to same, the court in passing on them entered judgment adopting this court's construction of J. S. Todd's will and refusing to enforce the liens of creditors as to certain of the debts that were created by Sophia J. and O. K. Todd after the death of J. S. Todd. Among the liens debts created by Sophia J. and O. K. Todd that were allowed and enforced, however, was that of appellant, and this was done because the money they borrowed of him was applied by them to the payment of the balance due on a debt held by one D. H. Barker, secured by a mortgage on the land, and which was created by the testator, J. S. Todd, two or more years before his death; it being held by the court that by thus discharging the debt of the testator and mortgage lien therefor, the life tenants were entitled to reimbursement from the remaindermen and to a lien on the land for the principal of the Barker debt paid by them; and that being true, the appellant, who furnished them the money to discharge the Barker lien, and took in lieu of the original mortgage a new one which proved defective, was entitled to be subrogated to the lien of the life tenants, therefore the judgment directed a sale of the land for the payment of the principal and interest of his debt and for the payment of certain lien debts in favor of other creditors that were allowed.

An appeal was taken from this judgment by the executrix of the will of J. S. Todd and the infant children of O. K. Todd; and while the opinion of the Court of Appeals deciding this appeal (see Todd's Ex. v. First Nat. Bank, 173 Ky. 60), reversed the judgment for other satisfactory reasons appearing therein, it approved and,

in legal effect, affirmed it in so far as it held appellant entitled by subrogation to a superior lien on the Todd land for his debt; and as such lien was again so allowed him by the circuit court in its judgment entered in obedience to the opinion and mandate of this court, his lien debt, amounting to $2,603.18, principal and interest, was, following the sale of the land and as directed by the judgment, paid him out of its proceeds. $44.37 of this amount was paid by him in satisfaction of costs taxed against him in the action, and $259.01 as a fee to an attorney who, by employment of the appellee, D. B. Wallace, represented him both in the circuit court and Court of Appeals in the litigation over his lien debt mentioned, and these sums, aggregating $303.38, constitute the amount for which appellant sues appellee in the instant case.

It is alleged in the petition that appellant was importuned by the appellee, Wallace, to make the loan of $2,100.00 to Sophia J. and O. K. Todd and was induced to do so by the assurance and representations of Wallace that the loan would be amply secured by a mortgage lien on the land in question of which he declared Sophia J. and O. K. Todd to be the owners in fee, and that the land was of far greater value then $2,100.00; that before consenting to make the loan to the Todds, appellant informed appellee he would not do so unless they owned the fee in the land, and he thereupon employed and paid appellee $5.00 to examine the title and report to him whether it was of that character; and shortly thereafter appellee represented to him that he had examined the title of Sophia J. and O. K. Todd to the land and found them to be the owners in fee thereof; and, in addition, assured appellant that if he would make them the loan, he, appellee, would indemnify or guarantee him against any loss that might result to him from the making of the loan.

It is further alleged in the petition that following this report of appellee upon the title of the Todds to the land, appellant was induced thereby and by the several above specified representations and guaranty of appellee to lend, and did lend, Sophia J. and O. K. Todd $2,100.00, and accept of them the mortgage on the land as security therefor, but that each and all of the above statements and representations made by appellee as to the Todds owning the fee in the land upon which appel-

lant accepted the mortgage as security for the loan of
$2,100.00, and regarding the value of the land, were
false and, in fact, but misrepresentations, which appel-
lee knew to be false when made by him, for he then well
knew that Sophia J. and O. K. Todd were not the owners
in fee of the land, but only the owners, each of a life
estate therein. That the above false statements and mis-
representations of appellee and each of them were fraud-
ulently made by him for the purpose of deceiving and
defrauding appellant, to whom their falsity was then
unknown, by inducing him to make the loan of $2,100.00
to Sophia J. and O. K. Todd, in order that he (appellee)
might receive of Sophia J. and O. K. Todd the sum of
$100.00, which they, though that fact was then unknown
to appellant, had agreed to pay him and did, after bor-
rowing the $2,100.00 of the latter, pay him as a fee or
commission for procuring for them the loan.

It is also alleged in the petition that appellant be-
lieved and relied on the above specified false and fraudu-
lent representation of appellee and was induced thereby
to make the loan of $2,100.00 to the Todds, which, but
for same, or had he known of the agreement of the latter
to pay appellee $100.00 for procuring for them the loan,
he would not have done.

The petition further alleges that when appellant was
made a party to the action brought to settle the Todd
estates, he called upon appellee to protect his lien debt
and to make good the latter's guaranty to save him from
loss by reason of his loan to Sophia J. and O. K. Todd,
in response to which appellee employed lawyers to rep-
resent appellant in that action, but that they collected
their fee of him instead of appellee.

The averments of the petition referred to, which are
admitted by the appellee's demurrer to be true, seem to
present for the appellant a case of actionable fraud, for
as said in 20 Cyc. 12:

"The general rule is that to constitute actionable
fraud it must appear: (1) That defendant made a ma-
terial representation; (2) that it was false; (3) that
when he made it he knew that it was false, or made it
recklessly, without any knowledge of its truth and as a
positive assertion; (4) that he made it with the intention
that it should be acted upon by plaintiff; (5) that plain-
tiff acted in reliance upon it; and (6) that he thereby
suffered injury. Each of the facts must be proved, with

reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery. A maxim announced in an early English case and ever since recognized as correct is that fraud without damage or damage without fraud is not actionable, but that where both concur an action of deceit will lie.'' In the same volume, page 14, it is said:

''The gist of a fraudulent misrepresentation is the producing of a false impression upon the mind of the other party, and if this result is actually accomplished the means of accomplishing it are immaterial.''

Tested by the rules just stated it cannot be questioned that in the petition are found all the essential elements of actionable fraud enumerated in the excerpt from Cyc., *supra,* and, in addition, averments of fact showing the existence of a confidential relation between appellant and appellee which entitled the former to place peculiar reliance upon the representations of the latter. Regarding the legal effect of such a relation, we find in 20 Cyc. 34, an apt statement of the following rule:

''The rule requiring investigation by the person to whom a misrepresentation is made does not apply if any relation of trust or confidence exists between the parties, so that one of them places peculiar reliance in the trustworthiness of the other; but in such cases the latter is under a duty to make full and truthful disclosure of all material facts, and is liable either for fraudulent misrepresentation or concealment. Nor is this principle confined to the typical cases of attorney and client, trustee and *cestui que trust,* partners, tenants in common, and the like; but it applies wherever the circumstances require or induce one person to repose trust and confidence in another, and it will sustain a right of action for false statements fraudulently made even though they are expressions of opinion, such as representations of law.''

As it appears from the petition that appellant's confidence in appellee was such as to cause him to employ and pay the latter to investigate the title of the Todds to the land upon which he took the mortgage, to accept his false report of its sufficiency and to submit himself wholly to his guidance in the matter of making the loan, it was the duty of appellee to deal honestly and fairly with him from the beginning to the end of the transaction; and above all, to frankly and truthfully reveal to

him any defects in the title of the Todds to the land offered as security for the loan and to advise appellant of the fact that he was being paid by the Todds liberal compensation for obtaining of him the loan for them; and if, as alleged in the petition, he falsely and fraudulently misrepresented these matters of desired and necessary information to appellant, or intentionally concealed them from him, and thereby induced him to make the loan, when otherwise he would not have done so, in either event appellee's conduct may well be said to have been actuated by bad faith and a fraudulent purpose to mislead, deceive, and defraud appellant. Therefore, if such bad faith and fraudulent intent should be established by proof, as alleged, appellant's right to recover of appellee such damages as he thereby sustained, will be free of doubt. It is not material that it was difficult to determine the precise character of the Todds' title to the land, or that the circuit court's conclusion respecting its character was rejected by this court; the fact remains that appellee concealed from appellant whatever doubts there were as to its being such a title as he was demanding, and positively and falsely represented the Todds to be the owners in fee, when they only owned a life estate therein, at the same time guaranteeing to pay appellant whatever loss he might sustain by the making of the loan to the Todds.

While it does not appear of record, it is said in the briefs of counsel that the court sustained the demurrer to the petition on the ground that the misrepresentations and guaranty made and given by appellee to obtain of appellant the loan for the Todds, not being in writing, were within the statute of frauds. This would have been true, if only the guaranty had been made. But here the right of appellant to recover the damages sued for arises out of the fraud and deceit of the appellee and such right is not affected by the statute; and as held in the several cases cited below, where one by false and fraudulent acts or representations induces another to enter into a contract or transaction resulting in loss to the latter, he is liable in damages therefor. Warren v. Baker, 2 Duvall 155; Dent v. McGrath, 3 Bush 174; Thomas v. McCann, 4 B. Mon. 601; Ford v. McComb, 12 Bush 723; Vertres v. Head, 138 Ky. 83; Drake v. Halbrook, 23 R. 1943.

It is true that in several of the cases, *supra*, a recovery of damages was refused because of the failure of

the proof to establish the fraud complained of; but in each of the cases the rule permitting a recovery as stated by us in the opinion is recognized, where supported by sufficient proof of the fraud alleged. Whether upon the trial of this case in the court below the fraud of appellee complained of will be established by the proof, we of course cannot tell, but we are convinced from the allegations of the petition that a cause of action is therein presented in behalf of the appellant; and for the reasons indicated the appeal prayed by the appellant is granted, the judgment of the circuit court reversed, and cause remanded, with directions to that court to set aside the order sustaining the demurrer that the pleadings may be completed, and the case proceed to a trial upon its merits.