## Cox v. Lilly.

(Decided March 16, 1923.)

### Appeal from Estill Circuit Court.

1. Contracts—Requisites of Fraud, for Which Equity Grants Relief, Stated.—Equity will not grant relief from a contract, on the ground it was procured by fraud, unless it appears that there was a representation of a material fact that the party knew or should have known was untrue, and that it was made to induce the other party to rely thereon, and the other party did in fact rely on it in executing the agreement.

2. Mines and Minerals—Evidence Held to Show Purchaser Did Not Rely on Misrepresentations Alleged.—Evidence that the purchaser of an interest in royalties under an oil lease, who claimed the vendor misrepresented that the well on the premises produced no water, did not disaffirm his purchase so long as royalties were being received thereon, and testified he would have completed payments and taken a deed, if the royalties had continued until they equaled the purchase price, held to show that he did not rely on the misrepresentations in making the purchase, so that he was not entitled to have the contract canceled after the well ceased to produce.

RIDDELL & SHUMATE for appellant.

GRANT E. LILLY for appellee.

OPINION OF THE COURT BY JUDGE MOORMAN—Reversing.

Appellant owned a tract of land in Estill county on which he had executed an oil and gas lease, retaining one-eight of the product as royalty. He became dissatisfied with the operations of the sub-lessee and employed appellee to institute suit to expedite the development. At the same time he sold to appellee a one-half interest in the royalty for $2,000.00, agreeing to pay him $500.00 to prosecute the suit against the sub-lessee and accepting his note for $1,500.00 due August 3, 1919, for the balance of the

purchase price. There were producing oil wells on the lease when the sale was made, and thereafter, until September, 1919, appellant deposited to the credit of appellee in a bank at Irvine one-half of the royalties received by him, amounting to about $300.00. When the note became due appellee refused to pay it, and this action was filed. Appellee defended on the ground that appellant had misrepresented to him the quantity of production, and also represented that the wells when pumped produced no water when in fact they produced a considerable quantity of water. He alleged that but for these false representations he would not have made the contract.

The evidence is conflicting. Appellee testified that he was not familiar with oil wells and the oil producing section of Estill county, but that he did know that wells from which water was pumped were considered of little value, and he was careful to inquire of appellant at the time the sale was made whether any water was being drawn from the wells that had been drilled on his land. He testified that appellant stated emphatically that no water had been pumped from the wells, and further, that his one-eight interest in the oil produced had theretofore averaged about a hundred dollars a month. He was corroborated in the first part of this testimony by a client who happened to be in his office at the time the trade was made. Appellant admitted that he had represented to appellee that his interest in the oil taken from the lease had previously amounted to one hundred dollars a month, and on the trial introduced evidence verifying the accuracy of that statement. He denied, however, that he had ever represented to appellee that no water had been pumped from the wells, but said it was generally known that all the wells in that county produced a certain amount of water, and he made that fact known to appellee. The weight of the evidence is to the effect that practically all the wells in that county did produce more or less water. A deed for the interest sold was never made. Appellee said that he prepared the deed promptly and communicated with appellant, asking for an appointment at a convenient place where the deed could be executed. Appellant testified that he did not receive the communication. He also said it was the understanding that appellee would prepare a deed and send it to him to be executed, that it had never been done, but he had always been and was at that time willing to execute a deed. Appellee filed suit against the sub-lessee, and thereafter four wells were

drilled on the property. They were not profitable. After the execution of the note the wells theretofore drilled began to fail and in August, 1919, they were practically abandoned. On the trial in equity the chancellor sustained the claim of fraud and cancelled the note, but rendered judgment against appellee for an amount equal to the royalties that he had received.

Equity will relieve one from a contract that is shown to have been procured by fraud. But the relief will not be granted unless it is shown that there was a misrepresentation of a material fact, that the party knew or should have known that it was untrue, that it was made for the purpose of inducing the other party to rely on it, and that he in fact did rely on it in executing the agreement. Livermore v. Middlesborough Town Lands Co., 106 Ky. 140, and Hicks v. Wallace, 190 Ky. 287.

The judgment is evidently based on a finding of fraudulent misrepresentation. The testimony of appellee and one other witness supports that view. On the other hand appellant denied the making of any misrepresentation. If this were all the evidence there would be ample reason for the chancellor's finding. But it appears that appellee accepted his part of the royalties for nearly a year, and there is evidence to the effect that part of it was accepted after he had cause to believe that water was flowing into the wells. Besides, he had bought a half interest in the royalty with the expectation of selling it at a profit before his note became due, and, according to his testimony, if the royalties had amounted to as much as $1,500.00 he would have paid the note and accepted a deed. This evidence tends to show that he did not rely on the representation he claims appellant made. Furthermore, it indicates that, being aware of the possibilities of the investment, he accepted the chance of unusual profits and did not relinquish it until his note became due, having from the first accepted the benefits of the contract. One cannot treat a contract as valid so long as there is a prospect of realizing a profit, and accept the profits as they are earned, and, when it is definitely ascertained that a profit will not be made but a loss sustained, then treat it as invalid. Appellee held the interest he had purchased for more than a year. He spent a large part of this time in the county seat of the county where the land is situated. There is evidence to show that he accepted royalties after he had received information that water was flowing into the wells. And while he had the right to

rely on any representation made by appellant in the absence of information that would lead him, in the exercise of ordinary diligence, to verify or disprove it, yet it seems to us that the facts recited, with his proximity to the land, his representation of appellant in the suit to expedite development, and his personal interest in a favorable determination of that suit, forcibly corroborate appellant's statement that no false representation was made, or, if that be not true, they certainly tend to show that such a representation was not relied on by appellee. If it was not relied on, although made, the contract must be sustained.

Giving effect to all the facts and circumstances, we feel impelled to hold that the claim of fraud was not sustained. It follows that upon the delivery to appellee of a valid deed to the interest purchased judgment should be rendered against him for the face value of the note with interest, subject to any royalties due him.

The judgment is reversed and the cause remanded for proceedings consistent with this opinion.