## Lincoln-Income Life Ins. Co. v. Kraus.

Oct. 6, 1939.

B. H. Farnsley, Judge.

E. J. Burton for appellant.

L. C. Yeast for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On March 2, 1936, the appellant and defendant below, Lincoln-Income Insurance Company, issued its in-

dustrial policy on the life of Elma C. Kraus, the infant daughter of the appellee and plaintiff below, Margaret Kraus, she then being about eight years of age. Defendant agreed in the policy, among other things, to pay to plaintiff as beneficiary therein the sum of $300 upon the death of her infant child, the insured. It died on March 20, 1937, one year and eighteen days after the issuance of the policy, the premium on which was 10 cents per week. Upon application for payment of the amount of the policy, insurer (defendant) declined to pay, upon the ground that plaintiff as beneficiary in the policy had made written application to defendant for its procurement and in which she not only represented that insured was in good health but that she had never been attended by a physician "for any serious injury or illness" nor had she ever been afflicted with a number of diseases enumerated therein, among which was "disease of the heart, liver, kidneys, or paralysis." It was also stated in the face of the policy that: "No obligation is assumed by the company unless on the date and delivery hereof the insured is alive and in sound health," etc.

Defendant contended that since the issuance of the policy, and following the death of the insured, infant, it learned from records of hospitals and sanitariums in the city of Louisville that she had been a patient therein, and that she was then and thereafter afflicted with a chronic case of lead poisoning, which according to the medical proof in the case is quite frequently productive of other bodily ailments of a more or less fatal and incurable nature, from one of which the insured died after being taken to the hospital some three or four days before her death. The occupation of the hospital by the insured occurred in 1933 and 1934, and an autopsy held upon the body after death showed the existence of a number of ailments, the medical names for which are given; each of them indicating a seriously depleted state of health, and a physical condition almost beyond the power of human restoration.

On being approached by insured to collect the amount of the policy, the two agents who were so approached informed the plaintiff of the facts that they had learned and of the truth of which they were convinced. They accordingly informed her that defendant did not regard itself as liable under the policy, but told her at the time that rather than to have litigation over the matter they would recommend the payment to her

of $50 in compromise of the claim. She then declined to accept it but stated that she would return home and consult her husband and report her determination within the next day or so. She appeared at the company's office in Louisville on the next day and talked to the same agent that she had approached on the day before—and who finally made the settlement for defendant—and accepted the proposition to receive $50 in full payment of any and all liability under the policy. A receipt to that effect was drawn up and signed and plaintiff was given a check in payment, which she later cashed. The date of the settlement was April 2, 1937, and defendant heard nothing more of the claim until the service of summons in this action which issued upon plaintiff's petition filed against it in the Jefferson Circuit Court on July 19, 1937.

In avoidance of the settlement—which it became necessary for plaintiff to do in order to recover—she having made this allegation in her petition: ''Plaintiff states further that the defendant, through its officers, agents, and employees, falsely, fraudulently and with intention to defraud her, misrepresented to her the real facts in connection with her claim against it, in that its agents, employees, and servants, represented to her that she had falsely made representation in the application for the policy and that the company was not liable to her in any amount, but that it would pay her $50.00 for a complete settlement. And plaintiff, relying upon the statements and not knowing her rights, agreed to a settlement for said amount of money and that plaintiff would not have agreed to any settlement had she not been overreached and made to believe that she had no claim against said company.'' She then asked that the settlement be set aside and held for naught and that she recover judgment for the full amount of the policy. Some controversy arose about her failing to tender or offer to tender the $50 paid in settlement of the claim, but for reasons hereinafter appearing it will not become necessary to further refer to or discuss any question connected therewith.

Defendant's demurrer filed to the petition was overruled, and in its answer it admitted the execution of the policy but relied on the false representations and concealments supra, as well as the condition of the policy voiding it if the insured was not in good health at the time of its delivery, which it averred was true. A reply

made the issues, and upon trial before a jury it, under the instructions submitted by the court, returned a verdict in favor of the plaintiff for the sum of $250, which was plaintiff's entire claim after being credited with the $50 compromise payment. Defendant's motion for a new trial was overruled, and it has filed the record in this court with motion for an appeal, urging through its counsel a number of alleged errors among which is the refusal of the court to sustain its motion for a peremptory instruction at the close of the evidence, chiefly for the reason that plaintiff had not only failed in her petition to allege facts sufficient to overcome the compromise settlement but had likewise failed to prove facts authorizing the submission to the jury of any fraud on the part of the defendant in procuring that settlement. We are convinced that the latter ground was and is meritorious and that the court erred in the respects indicated. We also regard some of the other errors relied on in the motion for a new trial as being meritorious, but since the one indicated clearly authorizes a reversal of the judgment, we will discuss and determine only it.

It is a universal rule that compromises between individuals of their contentions affecting their legal rights are favored by the law. It is likewise well established that a duly executed written contract will not be set aside and ignored, upon the ground of fraud in its procurement, unless the testimony clearly establishes the fraud, and the burden is upon the one asserting it to furnish the evidence necessary for that purpose. Those propositions are so fundamental that we do not deem it necessary to cite cases in fortification thereof.

It therefore became necessary for plaintiff in this case to prove the fraud which she charged was practiced upon her in procuring the settlement of her claim arising under the policy sued on. The fraud alleged and exclusively relied on consisted of misrepresentations made to plaintiff by the agents of the company who participated in effecting the settlement as to the company's non-liability, or rather the facts upon which it relied as a defense against the payment of the claim made by plaintiff. Mr. Webster in his New International Dictionary defines fraud in law as being: ''An intentional perversion of truth for the purpose of inducing another *in reliance upon it* to part with some valuable thing belonging to him, or to surrender a legal right; a false representation of a matter of fact which deceives and is

intended to deceive another so that he shall act upon it to his legal injury." (Our emphasis.) The text in 26 C. J. page 1060, Section 3, in defining legal fraud committed by *misrepresentation* states that an essential requisite to its establishment is the representation of alleged facts as the truth when they are untrue and of a nature "fitted to deceive." Therefore, no representation may be considered as fraudulent against which the law will furnish relief—although it might actually be false—if and provided the one to whom it was made and who acted upon it *knew* it to be false at the time, since in such case there is entirely lacking the essential element of deceit absolutely necessary to create actionable fraud.

The testimony in this case was amply sufficient to sustain a finding that the facts, furnishing the defense relied upon in this case, were true and that it was bona fide insisted on at the time by defendant's agents who affected the settlement. Plaintiff admitted, in giving her testimony, that she knew that the defense relied on was false when it was presented to her by defendant's agents, but nevertheless she took time *to consider the* proposal made by them and after the elapse of twenty-four hours, which she spent in her home where she had at least an opportunity to consult with her husband and other members of her family, she returned and appropriated the amount paid in compromise.

The text in the volume of Corpus Juris, supra, on page 1134, Section 55, says: "Since it is essential that the party to whom a misrepresentation is made should be deceived thereby, and believe it to be true, one can secure no redress for a representation which he knew to be false nor for failure to disclose facts which he knew to exist. If the representee knew the truth it is obvious that he was neither deceived nor defrauded, and that any loss he may sustain is not traceable to the representation but is in effect self-inflicted. Moreover, reliance upon representations necessarily implies a belief in their truth, and it is therefore obvious that one could not rely upon representations known to be false. The mind is incapable of reliance upon such representations." And on page 1137, Section 57, it is said: "It is essential that the hearer should have acted in reliance upon the misrepresentations for which he seeks redress."

In the notes to the inserted text there is an extended

catalogue of cases from perhaps every court in the country, some of which are from this court, they being: New York Life Insurance Company v. Hord, 78 S. W. 207, 25 Ky. Law Rep. 1531; Merchants', etc., Bank v. Cleland, Ky., 67 S. W. 386, (apparently not elsewhere reported); Newton v. Terry, Ky., 22 S. W. 159 (also not elsewhere reported); and Ferrill v. Coombs, 18 S. W. 226, 13 Ky. Law Rep. 737. Later cases from this court announcing the principle that no one can be fraudulently deceived by false representation so as to obtain relief in law if the representation was known to be false by the one who seeks such relief are: Baker v. McDonald, 185 Ky. 470, 215 S. W. 292; and Hicks v. Wallace, 190 Ky. 287, 227 S. W. 293.

In the Hord case on the specific point we said: "It (appellant in that case) was not and could not have been misled by a statement which it knew to be false." In the Hicks case the text in 12 Cyc. page 12, dealing with the question before us, was inserted with approval by this court, as part of which was and is (on page 14): "The gist of a fraudulent misrepresentation is the producing of a false impression upon the mind of the other party." [190 Ky. 287, 227 S. W. 296.] Many additional cases and text might be cited to the same effect, there being none to the contrary, and from which it may be truthfully said that the essence of fraud is deceitful practice by the party benefitted and which, when consisting of representations by him, misleads his victim and causes him to act upon the supposed truth of the representations when he has no knowledge concerning them. If he does possess knowledge of their falsity, but nevertheless acts upon them as though they were true, he does so at his peril and must abide the consequences, although the representation was actually false.

No legally effective misrepresentation was made to plaintiff in this case when the compromise with defendant was effected. She admitted in her testimony that her infant daughter, the insured, had been in the hospital at the times that the records of those institutions showed she was, and that she was afflicted with lead poisoning at the time. No testimony was introduced to disprove the fact that such an affliction is a serious one and is the breeder of other most probably fatal ones. Plaintiff also virtually admitted that she entered into the compromise with full knowledge of the alleged falsity

of defendant's contentions, as will be seen from this excerpt from her testimony:

"Q. But at the time you signed this release no one used any undue influence in getting you to sign this release did they? You went home and thought about it, and came back the next day and signed it? A. Certainly, I did, because they told me that I couldn't get anything more out of it.

"Q. Did anybody force you in any way, or persuade you in any way, to sign that release? A. Well wasn't that persuasion enough? Of course, that was, persuasion enough right there."

What the agents may have told her as to their conclusions with reference to the defensive effect of the facts relied on in defendant's answer was but the expression of their *opinion* as to the final outcome of an action to collect the amount of the policy; but the text in the volume of Corpus Juris supra (page 1079, Section 20) says: "A representation which is expressed and understood as nothing more than a statement of opinion cannot constitute fraud, and this is especially true where the opinion expressed is honestly entertained. To be actionable, a false representation must be one of fact as distinguished from an expression of opinion which ordinarily is not presumed to deceive or mislead, or to influence the judgment of the hearer, and upon which he has no right to rely."

Since, therefore, plaintiff not only failed to prove actionable fraud on the part of defendant's agents in procuring the settlement so as to justify its cancellation, but on the contrary admitted her knowledge of the falsity of their representations, the court should have upheld the compromise and peremptorily instructed the jury to return a verdict for defendant. The compromise was a solemnly made contract in writing and which the plaintiff executed on her part with a knowledge of the facts, and which overcame her contention of deception. The sanctity with which the law views such contracts still prevails and this record does not contain any reason why it should be disregarded.

Wherefore, the motion for appeal is sustained and the appeal is granted; the judgment is reversed with directions to set it aside and to sustain the motion for a new trial and for other proceedings consistent with this opinion.