Mitchell METZINGER, Appellant,

v.

KENTUCKY RETIREMENT
SYSTEMS, et al.,
Appellees.

No. 2007–SC–000363–DG.

Supreme Court of Kentucky.

Aug. 27, 2009.

Rehearing Denied Jan. 21, 2010.

Joseph Donald Satterley, Kenneth L. Sales, Paul Jason Kelley, Sales, Tillman, Wallbaum, Catlett & Satterley, Louisville, KY, Counsel for Appellant.

Katherine I. Rupinen, Kentucky Retirement Systems, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice SCOTT.

This is an appeal from a Court of Appeals' opinion affirming the decision of the Kentucky Retirement Systems, both of which are based on the underlying premise that KRS 61.607 allows the agency to consider annuity payments received as a result of a global settlement of workers' compensation and civil claims in calculating maximum disability retirement benefits. Because such an interpretation of KRS 61.607 exceeds the plain statutory language, we reverse the decision of the Court of Appeals and remand this matter to the Kentucky Retirement Systems for further proceedings consistent with this opinion.

*Background*

On May 31, 1998, while working as an electrician for the City of Louisville, Appellant, Mitchell Metzinger, was electrocuted by an energized conductor and suffered severe burns to his left hand and right arm such that he was disabled for life. Appellant subsequently applied for disability retirement benefits and filed both a workers' compensation action against his employer, the City of Louisville ("the City"), as well as a civil tort action against Louisville Gas & Electric Company ("LG & E") and Bill's Electric, both of whom were responsible for constructing and maintaining the light and pole that electrocuted him. Pursuant to KRS 342.700, the City subsequently filed an intervening complaint in the civil case against LG & E, Bill's Electric, and Appellant, seeking indemnification for sums of money it had already expended or expected to expend as a result of Appellant's work-related injury.

In May of 2001, Appellant was awarded permanent and total disability benefits (as well as medical expenses) in his workers' compensation claim against the City. Total payments due Appellant amounted to approximately $788,630.70 and were to be made at a rate of $1,860.00 per month, beginning in October 2001 and lasting until December of 2035. The City, however, never made payments pursuant to this monthly award.[1]

In December of 2001, Appellant, LG & E, Bill's Electric, and the City entered into a global settlement and release resolving not only Appellant's pending tort claim and workers' compensation award but also all of the indemnification claims asserted by the parties against one another. There, LG & E and Bill's Electric accepted primary responsibility for Appellant's injuries and they agreed to pay Appellant a lump-sum settlement totaling $549,649.00.[2] Significantly, the agreement also provided that Appellant be provided a monthly payment in the form of an annuity. The annuity was purchased for $435, 713.00,

---

1. The record shows that the City paid Appellant $27,855.12 in temporary total disability benefits and $12,556.80 in medical benefits (past and future), totaling $55,766.89.

2. LG & E contributed $542,149.00 towards the payment and Bill's Electric paid the remainder, $7,500.00.

with LG & E contributing $282,038.50 (approximately 65%) toward the price and the City paying the remainder, $153,674.50 (approximately 35%).

According to the terms of the settlement, the annuity was to pay Appellant $1,800.00 per month from January 1, 2002 to December 31, 2004. At that point, monthly payments were to increase to $1,915.80 per month and were to be paid until Appellant's death or for the next seventeen years, whichever was longer. In exchange for contributing to the purchase of the annuity, LG & E agreed to release the City from any claims of contribution or indemnification arising out of Appellant's injury and the City, likewise, released LG & E and Bill's Electric from any further claims of indemnification (totaling $882,809.51). In consideration for the City's agreement, Appellant was required to pay it $25,000 out of his settlement proceeds.

In exchange for the City's contribution to the purchase of the annuity, Appellant agreed to release the City from its monthly payment obligation under his prior workers' compensation award (though retaining rights to medical benefits).[3] The Department of Workers Claims subsequently approved the settlement agreement, thereby extinguishing his future rights to the award. The "compromise settlement" of the workers' compensation award reiterated that Appellant "understands and accepts $153,674.50 as sufficient consideration for a buy-out and waiver of the City's obligation under the [workers' compensation] Opinion and Award." Under the agreement, the City waived a lien, in total, of $704,139.01.

After the settlement, in May of 2002, the Kentucky Retirement Systems approved Appellant's application for disability retirement benefits. However, approximately nine (9) months later, the agency sent Appellant a letter informing him that a calculation of his disability allowance showed that his combined monthly benefit exceeded the maximum statutory amount. In particular, the Kentucky Retirement Systems found that Appellant had been overpaid $27,142.20 and requested repayment in that amount. In addition, the agency determined that Appellant's gross monthly allowance had to be lowered from $1,655.42 to $827.70 in order to conform to KRS 61.607(2).[4] The letter, though, did

---

3. In approving the settlement, the Department of Workers Claims explained the terms of the settlement as follows:

> It was decided between the City of Louisville and Louisville Gas & Electric, that they would split the cost of future exposure under the award, the purchase cost of the remaining 788,630.70 payable pursuant to that award. The cost of the annuity is 153,674.50 per party. City of Louisville shall pay 153,674.50 towards an annuity package being purchased by Louisville Gas & Electric for the benefit of the plaintiff. LG & E will be paying additional monies to purchase an annuity which exceeds the payment under the Opinion & Award.

4. KRS 61.607 ("Maximum disability benefit— Determination"), in relevant parts, states:

> [A] maximum disability benefit is hereby established which shall apply, upon disability retirement, to any disabled employee's account to which service credit is added to determine disability benefits or in any case where disability benefits are determined by computing a percentage of the disabled employee's final monthly rate of pay. The maximum disability benefit shall be determined by the following formula:
> (1) Add the monthly benefit payable to the disabled employee from the retirement system, using the monthly disability retirement allowance (not optional plan) but excluding dependent children's allowances, if any, to his monthly benefit, if any, from Social Security, even though these payments may not begin for a period of time as required for qualification under the federal Social Security law, excluding spouse or dependent benefits, and his monthly benefit, if any, from workers' compensation, even though

not specify how these figures were arrived at.

Suspecting that the agency had considered all of his annuity payments in its calculation, Appellant contested the agency's determination and requested an administrative hearing. There, Appellant claimed that he had not received any workers' compensation payments to justify such a reduction in his monthly disability benefits.[5] At the conclusion of the administrative hearing, however, the Hearing Officer upheld the agency's initial determination.[6] In her order, the Hearing Officer found that Appellant's global settlement effectively "substituted his workers' compensation benefits for an annuity," and, relying upon *Rue v. Kentucky Retirement Sys.*, 32 S.W.3d 87 (Ky.App.2000), held that the annuity payments represented a "monthly benefit, if any, from workers' compensation" pursuant to KRS 61.607(1). Therefore, the Hearing Officer concluded, the Kentucky Retirement Systems was entitled to consider Appellant's monthly annuity payments in calculating his maximum disability benefits.

The Appellant filed exceptions to the Hearing Officer's order but the Board of Trustees adopted her recommendation and issued a "Final Order and Notice of Appeal Rights." The Franklin Circuit Court, on appeal, upheld the decision of Kentucky Retirement Systems and the Court of Appeals affirmed its ruling. We granted Appellant's Motion for Discretionary Review.

On appeal, Appellant argues that the agency's interpretation was erroneous on two grounds. First, Appellant contends that the Kentucky Retirement Systems improperly considered his annuity payments as workers' compensation benefits when it reduced his disability retirement benefits. Secondly, and in any event, Appellant argues that it was arbitrary and capricious for the Kentucky Retirement Systems to consider the entire amount of his annuity payments in its calculation. The Kentucky Retirement Systems, on the other hand, does not dispute the fact that they considered Appellant's annuity payments in calculating his maximum monthly benefits. Rather, the agency argues that KRS 61.607 permitted it to take into account any payments that were voluntarily exchanged for a right to payment under an outstanding workers' compensation award.

*Issue Presented*

We address the issue we consider central to the proper resolution of this case: whether the Kentucky Retirement Systems' interpretation of KRS 61.607 is con-

these payments may not have begun as of the date the disabled member applies for disability retirement benefits, excluding spouse or dependent children's allowances, from workers' compensation, to arrive at a projected combined monthly benefit.

(2) If the projected combined monthly benefit exceeds one hundred percent (100%) of the disabled employee's final rate of pay or his final compensation, whichever is greater, his disability retirement allowance from the retirement system shall be reduced to an amount which would cause his projected combined monthly benefit to equal one hundred percent (100%) of his final rate of pay or his final compensation, whichever is greater; however, the disability retirement allowance shall not be reduced below an amount which would result from a computation of his disability retirement allowance from the retirement system using the disabled employee's actual total service.

5. After several pre-hearing conferences were conducted, it was determined that there were no factual issues to be determined and that the matter should be submitted on the record to a Hearing Officer. Position Statements and Reply Position Statements were submitted by both parties.

6. The order was issued and titled, "Findings of Fact, Conclusions of Law and Recommended Order."

sistent with the plain language of the statute. We hold that it is not. Accordingly, we do not reach the parties' remaining dispute as to how the agency was to calculate and apportion the annuity.

### 1. KRS 61.607

KRS 61.607 establishes an individual's maximum disability benefits under the law. Subsection (2) of the statute defines maximum disability benefits as a "combined monthly benefit" that "exceeds one hundred percent (100%) of the disabled employee's final rate of pay or his final compensation, whichever is greater." If the sum of one's combined monthly benefit exceeds this defined maximum benefit, KRS 61.607 empowers the Kentucky Retirement Systems to reduce the disability retirement allowance "to an amount which would cause his projected combined monthly benefit to equal one hundred percent (100%) of his final rate of pay or his final compensation, whichever is greater."

KRS 61.607 also sets forth a formula that the Kentucky Retirement Systems must use in calculating one's maximum disability benefits. Subsection (1) directs the agency to "[a]dd the monthly benefit payable to the disabled employee from the retirement system ... to his monthly benefit, if any, from Social Security ... and his monthly benefit, if any, from workers' compensation ... to arrive at a projected combined monthly benefit." The statute, therefore, considers two other forms of monthly payment (in addition to disability benefits) in formulating a combined monthly benefit for purposes of a maximum monthly benefit calculation: social security and workers' compensation. It is the agency's interpretation of the latter that is at issue here.

### 2. Standard of Review

So long as it is in "the form of an adopted regulation or formal adjudication,"

we review an agency's interpretation of a statute it is charged with implementing pursuant to the doctrine enunciated in *Chevron U.S.A., Inc. v. Natural Res. Def. Council Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *Bd. of Trustees of Judicial Form Ret. Sys. v. Att'y Gen. of the Commonwealth,* 132 S.W.3d 770, 786–87 (Ky.2003) (*citing Christensen v. Harris County,* 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000)); *see also Louisville/Jefferson County Metro Gov't v. TDC Group, LLC,* 283 S.W.3d 657, 660–61 (Ky. 2009). Under *Chevron,* we defer to the agency's interpretation "if the statute is silent or ambiguous with respect to the specific issue." *Chevron,* 467 U.S. at 843, 104 S.Ct. 2778 ("[T]he question for the court is whether the agency's [interpretation] is based on a permissible construction of the statute."). Yet, where "the apparent statutory ambiguity can be resolved using 'traditional tools of statutory construction ... [a]n agency's interpretation is not entitled to *Chevron* deference." *Mid–America Care Found. v. Nat'l Labor Relations Bd.,* 148 F.3d 638, 642 (6th Cir. 1998) (*citing Immigration & Naturalization Serv. v. Cardoza–Fonseca,* 480 U.S. 421, 446, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987); *see also Chevron,* 467 U.S. at 843 n. 9, 104 S.Ct. 2778 ("If a court, employing traditional tools of statutory construction, ascertains that [the legislature] had an intention on the precise question at issue, that intention is the law and must be given effect.").

### 3. Analysis

The language at issue here is found in subsection (1) of the statute, which reads "monthly benefit, if any, from workers' compensation." Throughout the history of this case, the Kentucky Retirement Systems has contended that these words allow

the agency to consider not only monthly benefits from workers' compensation, but also any other benefits voluntarily exchanged for monthly workers' compensation benefits. However, the "traditional tools of statutory construction" reveal in KRS 61.607 a legislative intent contrary to that which the Kentucky Retirement Systems asserts. Accordingly, we do not defer to the agency's interpretation. *See Mid–America,* 148 F.3d at 642.

■ "It is our responsibility to ascertain the intention of the legislature from the words used in enacting the statute rather than surmising what may have been intended but was not expressed." *Flying J Travel Plaza v. Commonwealth,* 928 S.W.2d 344, 347 (Ky.1996) (*citing Kentucky Ass'n of Chiropractors, Inc. v. Jefferson County Med. Soc'y,* 549 S.W.2d 817 (Ky.1977)); *see also Hawley Coal Co. v. Bruce,* 252 Ky. 455, 67 S.W.2d 703, 705 (1934) ("When language is clear and unambiguous, it will be held to mean what it plainly expresses."). Consequently, this Court has long held that when "a statute on its face is intelligible, [entities] are not at liberty to supply words or . . . make additions." *Hatchett v. City of Glasgow,* 340 S.W.2d 248, 251 (Ky.1960). Thus, "[t]he power to create exceptions by construction can never be exercised where the words of the statute are free from ambiguity, and its purpose Plain." *Hawley Coal,* 67 S.W.2d at 705.

Taking the language of subsection (1) to mean what it "plainly expresses," *Hawley Coal,* 67 S.W.2d at 705, we conclude that the interpretation the Kentucky Retirement Systems has applied exceeds the statute's clear meaning. Looking to the statute itself, the only way in which the legislature chose to qualify KRS 61.607(1) was as to the existence or non-existence of monthly payments from workers' compensation—"monthly benefits, *if any,* from

workers' compensation." (Emphasis added); *cf. Rue,* 32 S.W.3d at 88 ("In this regard, the statute specifies which allowances shall not be considered."). In other words, for purposes of a KRS 61.607(1) calculation, monthly benefits from workers' compensation are either present or they are not. Notably absent from the statute's language are any additional words of qualification allowing it to incorporate anything more than—or, more aptly stated, anything *like*—a monthly payment from workers' compensation.

■ Rather, KRS 61.607 speaks to the contrary. Because the statute's language refers only to "monthly benefits . . . *from* workers' compensation," (emphasis added), it requires a literal monthly payment from a workers' compensation award. Thus without additional words suggesting a payment source substituted for or equivalent to a workers' compensation award, we are not free to presume that the statute requires any more—and in this case, much more—than that to which it technically refers. *See Hawley Coal,* 67 S.W.2d at 705; *Beckham v. Bd. of Educ. of Jefferson County,* 873 S.W.2d 575, 577 (Ky.1994); *Rue,* 32 S.W.3d at 89 ("We are not free to add words to statutory enactments in order to enlarge their scope beyond that which can be gleaned from a reading of the words used by the legislature."). We conclude, therefore, that the Kentucky Retirement Systems' interpretation of KRS 61.607 goes beyond the statute's plain meaning and, consequently, we must disregard it.

■ Accordingly, the Kentucky Retirement Systems could not consider Appellant's annuity payments in calculating his maximum disability benefit pursuant to KRS 61.607. Moreover, the record clearly shows that Appellant did not receive any monthly payments pursuant to—or "from"—his original workers' compensa-

tion award. In fact, the Kentucky Retirement Systems does not contest the fact that Appellant never received weekly or monthly benefits from the City or its insurance carrier pursuant to his 2001 workers' compensation award. In addition, should Appellant's annuity terminate prematurely, the Department of Workers Claims has no authority for its enforcement by virtue of the settlement in the Circuit Court and the agency's acceptance thereof. Appellant, indeed, waived the City's obligation to him under the award and his right to reopen his claim pursuant to KRS 342.125.

If the General Assembly had desired to broaden the scope of the agency's consideration of workers' compensation benefits under KRS 61.607(1), it could have certainly done so. It could have stated, for example, that the agency was to consider "monthly benefits, if any, from workers' compensation *or those received in lieu of, or substituted for, workers' compensation*" or, perhaps, "monthly benefits, if any, from workers' compensation *or other settlements in regard thereof.*" Absent any language indicating such broader intent, we cannot agree that the legislature intended KRS 61.607 to capture any annuity payments exchanged for a workers' compensation award, notwithstanding the fact that the payments here may have, in some respects, represented a bargained-for and functional replacement.

Were we to hold otherwise today and conclude that the Kentucky Retirement Systems could consider those amounts that the City actually contributed to Appellant's annuity in its KRS 61.607 determinations, our decision could produce an unreasonable result. *See Bailey v. Reeves,* 662 S.W.2d 832, 834 (Ky.1984) (*citing Dep't of Revenue v. Greyhound Corp.,* 321 S.W.2d 60 (1959)). We perceive an irreconcilable difficulty in translating the uncertain and unique value of Appellant's annuity to that of a workers' compensation benefit. That is to say, because all personal injury settlements—including Appellant's—are always influenced by a variety of peculiar and abstract trial considerations like trial risk and the persuasiveness of the plaintiff's case, blindly equating the value of those settlements as pure workers' compensation benefits ignores the complexity of the underlying conflicts that a tort settlement seeks to resolve.

Here, indeed, the record shows that the parties sought to avoid the uncertainty of a jury determination of the joint tortfeasors' fault, thereby allocating the risk they would incur at trial in the form of an adverse judgment. The shape in which that risk was ultimately allocated, in turn, was a product of the particular uncertainties facing the parties here. The City, for example, may have been concerned about the amount of its subrogated recovery, which, absent a settlement, would depend upon a jury's allocation of fault after proof at trial. Similar concerns and additional exposure to considerable damages at trial (e.g., pain and suffering damages and punitive damages) likely motivated LG & E and Bill's Electric to settle Appellant's personal injury claims before turning the matter over to a jury. It is in this way that we fear the possibility of inaccurate and, perhaps, unjust KRS 61.607 determinations should we accept the argument advanced by the Kentucky Retirement Systems: the valuation would be, at best, artificial and out of step with the real forces affecting a tort settlement.

Even more significantly, if we were to hold otherwise and conclude that the Kentucky Retirement Systems could consider any amounts that the City contributed to Appellant's annuity, our decision could trample our established state policy encouraging the freedom of settlement. *See*

*e.g. Lincoln–Income Life Ins. v. Kraus,* 279 Ky. 842, 132 S.W.2d 318, 320 (1939) ("It is a universal rule that compromises between individuals of their contentions affecting their legal rights are favored by the law."). The effect of accepting the Kentucky Retirement Systems' argument would be to allow the agency to always set off a recipient's disability benefits in the amount that the recipient's employer set off its workers' compensation obligation in a related tort settlement. This, in turn, would likely discourage injured employees from settling their tort actions against their employer and others. Why? To keep them from being categorized as substituted worker's compensation benefits.

The Kentucky Retirement Systems asserts that *Rue* supports its interpretation of KRS 61.607.[7] We disagree. In *Rue,* the Court of Appeals held that Kentucky Retirement Systems did not err by including the gross amount of an individual's workers' compensation award in calculating his maximum disability benefits under KRS 61.607. *Rue,* 32 S.W.3d at 87–8. In so doing, the Court of Appeals rejected the idea that the agency was to consider only the net amount of an award, e.g., the actual amount the claimant received after deducting attorneys' fees. *Id.* at 88. From this holding, the Kentucky Retirement Systems argues that *Rue* stands for the proposition that one cannot voluntarily reduce his or her workers' compensation benefits in order to lessen the amount calculated in KRS 61.607. Thus, in reliance thereon, the agency concluded, Appellant Metzinger could not choose to replace his workers' compensation benefits with an annuity and still evade the statute's application.

This argument, however, misconceives the holding in *Rue* and ignores a critical factual distinction. First, *Rue* confronted the issue of what constitutes workers' compensation when *a portion of the benefits* are voluntarily reduced—not replaced—by the claimant pursuant to a preexisting contractual obligation. *See id.* at 89–90 n. 5 ("[W]e are convinced that it cannot be legitimately argued that because a paycheck is reduced by voluntary deductions for insurance, car payments, deferred compensation and the like, the amount of take-home pay presents the true amount of one's compensation."). *Rue* simply did not address what constitutes workers' compensation when *all of the benefits* are waived and exchanged for another form of payment altogether—an agreed-upon global tort settlement where liability exceeds that alleged under the Kentucky Workers Compensation Act. *See* KRS Chapter 342. Second, Appellant Rue—unlike Appellant Metzinger here—was, in fact, receiving payments pursuant to a workers' compensation award. That is not the case here. Thus, the applicability of KRS 61.607 to the award in *Rue* was never at issue as it is here.

### Conclusion

For the forgoing reasons, the decision of the Court of Appeals is hereby reversed and this matter is remanded to the Kentucky Retirement Systems for further proceedings consistent with this opinion.

All sitting. All concur.

---

7. In *Rue,* the Court of Appeals confronted a generally similar issue to that at hand: "whether the Kentucky Retirement Systems correctly calculated the amount of ... disability retirement benefit in accordance with the mandate set out in ... [KRS] 61.607," and, more specifically, whether there was "error in the methodology used by the retirement systems in arriving at the amount of [Rue's] 'combined monthly benefit.'" *Rue,* 32 S.W.3d at 87–8.