DEPARTMENT OF REVENUE, FINANCE AND ADMINISTRATION CABINET, Commonwealth of Kentucky, Appellant

v.

SHININ' B TRAILER SALES, LLC, Appellee

No. 2014–CA–001097–MR

Court of Appeals of Kentucky.

RENDERED: SEPTEMBER 4, 2015; 10:00 A.M.

Jennifer Stosberg, Office of Legal Services for Revenue, Frankfort, Kentucky, for Appellant.

S. Ryan Newcomb, Frankfort, Kentucky, for Appellee.

BEFORE: D. LAMBERT, MAZE, AND THOMPSON, JUDGES.

*OPINION*

MAZE, JUDGE:

The Department of Revenue, Finance and Administration Cabinet (the Department) appeals from an order of the Franklin Circuit Court upholding an order by the Kentucky Board of Tax Appeals (Board). The Department argues that the Board and the circuit court erred in finding that horse trailers which include living quarters similar to those in recreational vehicles fall within the statutory exemption from sales taxes under KRS 139.470(21). However, we agree with the Board and the circuit court that the trailers at issue are "intended for the carriage of freight," and that the transportation of horses is within the meaning of the term "carriage of freight." Hence, we affirm.

The underlying facts of this matter are not in dispute. Shinin' B Trailer Sales, LLC (Shinin') is a single member limited liability company owned and operated by John T. Bradbury in Elizabethtown, Kentucky. Shinin' sells horse and livestock trailers. The Department conducted an audit of Shinin' for the period January 1, 2008 through December 31, 2010. Following that audit, the Department concluded that Shinin' had failed to collect sales tax on the sales of certain trailers. Based on this conclusion, the Department assessed Shinin' $41,774.74 for the unpaid sales tax, plus interest and penalties.

The Department's assessment was based upon Shinin's sale of twenty-one separate horse trailers with living quarters containing a kitchen, bathroom, seating area, storage area and sleeping facilities. All of the trailers have a load capacity over 1,000 pounds and are designed to be drawn by a motor truck, truck tractor or by having their front end supported by a motor truck or truck tractor. All of the trailers have a rear portion containing horse stalls and space for horse-related items. Twenty of the trailers can carry three or four horses, and one of the trailers can carry six horses.

Shinin' argued that the trailers were exempt from sales tax under KRS[1] 139.470(21). After the Department denied

1. Kentucky Revised Statutes.

the exemption, Shinin' appealed the Department's assessment to the Board pursuant to KRS 139.340. In its final order issued on May 9, 2013, the Board found that the exemption applied and reversed the assessment. Pursuant to KRS 131.370, the Department appealed the Board's decision to Franklin Circuit Court. On June 11, 2014, the circuit court issued an opinion and order affirming the Board's decision. This appeal followed.

KRS 13B.150(1) limits our review to the record from the Board unless there is an allegation of fraud or misconduct involving a party. No such allegation has been made, thus, we limit our review to the record as it existed before the Board. The Department argues only that the Board and the circuit court misinterpreted the statutory exemption in KRS 139.470(21). As this is solely a question of law, we review these matters *de novo. Louisville Edible Oil Products, Inc. v. Revenue Cabinet, Commonwealth,* 957 S.W.2d 272, 274 (Ky.App.1997), *citing to Reis v. Campbell Co. Bd. of Educ.,* 938 S.W.2d 880 (Ky. 1996), and *Epsilon Trading Co., Inc. v. Revenue Cabinet, Commonwealth,* 775 S.W.2d 937 (Ky.1989).

KRS 139.470(21) provides for a sales tax exemption for "[g]ross receipts from the sale of a semi-trailer as defined in KRS 189.010(12) and trailer as defined in KRS 189.010(17)[.]" KRS 189.010(12) defines "semitrailer" as

a vehicle designed to be attached to, and having its front end supported by, a motor truck or truck tractor, intended for the carrying of freight or merchandise and having a load capacity of over one thousand (1,000) pounds.

KRS 189.010(17) defines a "trailer" as any vehicle designed to be drawn by a motor truck or truck-tractor, but supported wholly upon its own wheels, intended for the carriage of freight or merchandise and having a load capacity of over one thousand (1,000) pounds.

We begin with the basic rule of statutory construction that tax exemptions are narrowly construed, and the party seeking the exemption has the burden to show that it applies. *Revenue Cabinet v. Hubbard,* 37 S.W.3d 717, 719 (Ky.2000). *See also* KRS 139.260, which codifies the rule. The issues in this case involve the meaning of certain words and phrases in KRS 139.470(21). When interpreting statutory language, all words and phrases in a statute, unless otherwise defined, should be construed according to their common meaning. KRS 446.080(4). The common meaning of words is often determined by reference to dictionary definitions. *Jefferson Cnty. Bd. of Educ. v. Fell,* 391 S.W.3d 713, 719 (Ky.2012)

The parties agree that the vehicles at issue have a load capacity of over 1,000 pounds and are designed to be drawn by a motor truck or tractor trailer. In arguing against the exemption, the Department focuses on the language, "intended for the carriage of freight or merchandise." The Department contends that the trailers fail to meet the statutory definition in two significant aspects. First, the Department argues that horse trailers with living quarters are not objectively intended for a primary purpose as freight vehicles. And second, the Department asserts that the transportation of horses in such vehicles is neither freight nor merchandise as used in the statute.

On the first point, the Department takes the position that the presence of living quarters makes it impossible for the trailers to be used only or primarily for carrying freight or merchandise. In rejecting this argument, the Board and the circuit court both noted that the word "intended" is not modified by any limiting

language such as "primarily," "primary purpose," "exclusively" or "only." The Board also noted that the statutory definition of "recreational vehicle" set forth in the property tax statute, KRS 132.010(17), uses the language "primarily designed," but KRS 189.010(12) and (17) do not include any similar limiting language. Consequently, the Board and the circuit court both concluded that Shinin' is not required to prove that the trailers are exclusively or primarily intended for carriage of freight or merchandise.

■ We agree. When a statute is clear on its face, courts are not at liberty to supply words or make additions. *Metzinger v. Kentucky Ret. Sys.*, 299 S.W.3d 541, 546 (Ky.2009), *citing Rue v. Kentucky Ret. Sys.*, 32 S.W.3d 87, 89 (Ky.App.2000). The dictionary definition of "intend" is "to plan or design for," or as a transitive verb, "to mean (something) to be or be used (for); design ..." *Webster's New World College Dictionary* (2010). Black's Law Dictionary defines the word to mean "[t]o have in mind a fixed purpose to reach a desired objective; to have as one's purpose." *Black's Law Dictionary*, 10th ed. 2014. Similarly, Kentucky case law interprets the word "intended" to mean the purpose for which the item was designed. *Sterling Novelty Co. v. Commonwealth*, 271 S.W.2d 366 (Ky.1954), holding that the statutory phrase "intended to be used for the purpose of gambling" refers to the purpose for which the machine or contrivance was designed, rather than the intentions of the owner. *Id.* at 368.

Based on these common definitions, we conclude that the word "intended" focuses on the purpose for which the trailers were designed. There is no question that the trailers were intended for the transport of horses. The living quarters and storage space are included to further that purpose. We are not at liberty to add limit-

ing language that the General Assembly has chosen not to include. In addition, the definitions of "trailer" and "semi-trailer" referenced in the sales tax statute are used by both the Transportation Cabinet and the Department. There is no indication that the General Assembly intended for the definitions to apply only to certain types of horse trailers.

■ Along these same lines, the Department also contends that the carriage of horses in these trailers is not "freight" within the meaning of the statute. The Department contends that the term "freight" requires that the property being transported be commercial in nature. Given the inclusion of living quarters, the Department argues that the trailers are designed for the recreational carriage of horses rather than a commercial use. The Department asserts that such recreational use places the trailers outside of the scope of the exemption.

■ Again, we disagree with the Department's interpretation. The statutory definitions require that the trailers be "intended for the carriage of freight or merchandise." The term "merchandise" has a commercial connotation. *See Webster's, supra*, defining merchandise as "things bought and sold; goods; commodities; wares." *See also Black's Law Dictionary*, defining merchandise as "involved in trade or traffic; that which is passed from one person to another by purchase and sale." In contrast, the word "freight" is defined as "[g]oods carried by a vessel or vehicle, especially by a commercial carrier ...". *Webster's, supra*. See also *Black's Law Dictionary*, defining "freight" as "[g]oods transported by water, land, or air; CARGO." By including both terms, the General Assembly clearly intended for the words to have different meanings. Thus, while "freight" may include merchandise or other goods transported for commercial pur-

poses, the definition may include the transportation of goods for non-commercial purposes as well.

Furthermore, as noted above, the word "intended" refers to the purpose for which the trailers are designed, not to the intended use of the owner or user. *Sterling Novelty, supra* at 368. The trailers are designed for the transportation of horses. Horses are "freight" within the context of the statute. The General Assembly did not specify that the definitions apply to only certain uses of horse trailers, or only when the trailers are purchased and used by a commercial carrier. Consequently, we agree with the Board and the circuit court that the horse trailers fall within the plain meaning of the statutory exemption.

Accordingly, the judgment of the Franklin Circuit Court is affirmed.

ALL CONCUR.